[No. B184268. Second Dist., Div. Five. Nov. 21, 2006.]

HILTON K. et al., Plaintiffs and Appellants, v.
MENACHEM MENDEL GREENBAUM et al., Defendants and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C.

COUNSEL

Melvin Teitelbaum for Plaintiffs and Appellants.

Revere & Wallace, Frank Revere, Gabriel Dermer and Annie Kyureghian for Defendants and Respondents Menachem Mendel Greenbaum and Cheder Menachem, Inc.

Norton & Fairman and Robert Fairman for Defendant and Respondent Joseph Mishulovin.

OPINION

**TURNER, P. J.—**

## I.  INTRODUCTION

Plaintiffs, Miriam and Hilton K. and their minor son (the minor), appeal from orders granting summary judgment in two lawsuits. The minor attended a religious day school, Cheder Menachem, Inc. (the school). A Hebrew studies teacher, Mordechai Yomtov, ultimately pled guilty to charges of molesting some of the students at the school including the minor. Plaintiffs appeal from orders granting summary judgment in favor of: the school; the

school's director, Rabbi Joseph Mishulovin; and the school's principal, Rabbi Menachem Mendel Greenbaum.

In the published portion of this opinion, we discuss plaintiffs' contention that two rulings in consolidated actions brought by other children who attended the school and their parents granting two motions pursuant to Civil Code[1] section 3295, subdivision (c) to permit financial condition discovery "precluded" the summary judgment motions in this case from being granted. We agree with defendants that the section 3295, subdivision (c) findings in the consolidated lawsuits allowing financial condition discovery were inadmissible in the present cases and entitled to no preclusive effect.

## II. BACKGROUND

This appeal involves three separate summary judgment motions in two lawsuits arising from Mr. Yomtov's molestation of the minor. One lawsuit was filed by Miriam and Hilton and was ruled on by Judge Irving S. Feffer. The other lawsuit was filed by Hilton as the minor's guardian ad litem. The three summary judgment motions were primarily based on the same set of facts. Although the evidence is consistent in most respects, we distinguish the evidentiary support for the different motions where it is pertinent. Defendants contended that the following facts were undisputed. The school is one for boys. Rabbi Mishulovin helped to establish the school in 1993. Rabbi Mishulovin was a director of the school at the time plaintiffs' son attended the school. Rabbi Mishulovin's primary responsibility was to raise funds for the school. Rabbi Mishulovin spent about 5 percent of his time at the school.

The school principal hires the teachers at the school with board approval. Rabbi Yosef Baitelman was the school's principal between 1995 through 2000. Rabbi Baitelman, with the board's approval, hired Mr. Yomtov to teach third grade Judaic studies at the school for the 1995 through 1996 school year. Rabbi Baitelman never heard anyone say that Mr. Yomtov had abused any children.

The minor enrolled in the second grade during the 1999 through 2000 school year. In 2000, which was five years after Mr. Yomtov was hired, Rabbi Greenbaum was hired as the Judaic studies principal for the 2000 through 2001 school year. During that year, Mr. Yomtov was the minor's third grade Judaic studies teacher. Also during that academic year, Mr. Yomtov kept the minor in class for recess and in private meetings. During these meetings, Mr. Yomtov molested the minor. Although the minor was no longer one of Mr. Yomtov's students, plaintiffs contended the molestation continued during

---

[1] Unless otherwise indicated, future statutory references are to the Civil Code.

the 2001 through 2002 school year. According to plaintiffs, the molestation continued until Mr. Yomtov was terminated. As previously noted, Mr. Yomtov ultimately pled guilty to molesting the minor as well as other children.

Rabbi Samuel Schwarzmer is a licensed education psychologist affiliated with the school through the title I program which provides moneys for "underachieving, underprivileged" youngsters. (No Child Left Behind Act of 2001, Pub.L. No. 107-110 (Jan. 8, 2002) 115 Stat. 1425.) Rabbi Schwarzmer is not a school employee. In March 2001, Miriam telephoned Rabbi Schwarzmer at home in the evening and said that her son was acting funny in the bathroom. She also told Rabbi Schwarzmer that Mr. Yomtov was keeping her son in the classroom during recess. During this time period the minor was sitting on Mr. Yomtov's lap. At his deposition, Rabbi Schwarzmer described what occurred during his conversation with Miriam: "I asked her if she asked her son if there was anything inappropriate going on, she said she had asked him, and that nothing was going on. And I believe she asked him if his teacher was touching him in his privates was the expression I think she used and he said no." The minor said he was being taught the ' "Secrets of the Torah' " during the recesses. Rabbi Schwarzmer spoke with Rabbi Greenbaum about making sure the minor would be let out for recess. Rabbi Greenbaum did not inform Rabbi Mishulovin about the Schwarzmer-Greenbaum conversation until around April 2001.

In April 2001, Hilton spoke with Rabbi Greenbaum. Hilton was concerned about the youngster being kept in at recess. During this conversation with Rabbi Greenbaum, Hilton did not express any concerns that Mr. Yomtov was molesting the minor. Rabbi Mishulovin was not advised of the Greenbaum conversation.

In support of their separate summary judgment motion, Rabbi Greenbaum and the school added the following additional facts. Miriam testified under penalty of perjury that she never thought Mr. Yomtov was actually abusing the minor. Miriam was a teacher at the school during the entire time period that Mr. Yomtov was molesting her son. Miriam is trained to recognize the psychiatric behaviors manifested by molesters and their victims. Miriam is also trained to report inappropriate sexual behavior to the proper government authorities. Until November 10, 2001, Miriam never told any other school employee that she thought that Mr. Yomtov was molesting the minor. Further, in the April 2001 Greenbaum conversation, Hilton said that Mr. Yomtov was keeping the minor in during recess. During the recesses, Rabbi Greenbaum said Mr. Yomtov was teaching the minor the "Secrets of the Torah."

Rabbis Schwarzmer and Greenbaum spoke with each other about their respective conversations with Miriam and Hilton. According to Rabbi

Greenbaum, the substance of the Schwarzmer-Greenbaum conversation was the parents were concerned that Mr. Yomtov was keeping their son in class during recess and teaching the "Secrets of the Torah." There was no discussion about the possibility that Mr. Yomtov was sexually abusing the minor. Rabbi Greenbaum instructed Mr. Yomtov to let the minor out for recess.

On Saturday night, November 10, 2001, another parent telephoned Rabbi Greenbaum to report that her son claimed to have been molested by Mr. Yomtov. The other parent also suspected that the minor was being molested as well. The other parent then contacted Hilton and Miriam on November 10, 2001. Hilton and Miriam then spoke with their son. The minor then admitted for the first time that he had been molested by Mr. Yomtov. Miriam and Hilton never thought prior to that time that Mr. Yomtov was molesting their son.

On November 11, 2001, while in New York attending a convention, Rabbi Mishulovin spoke with Rabbi Greenbaum. Rabbi Greenbaum informed Rabbi Mishulovin about the allegations against Mr. Yomtov. Rabbi Mishulovin instructed Rabbi Greenbaum to fire Mr. Yomtov and confirmed that the police would be called. On November 12, 2001, at Rabbi Greenbaum's direction, the school secretary, Yehudis Lipskier, reported Mr. Yomtov to the police.

Prior to November 11, 2001, Miriam and Hilton never told Rabbi Mishulovin they suspected that Mr. Yomtov was molesting their son. Rabbi Mishulovin never suspected Mr. Yomtov was doing anything inappropriate with any child at the school. Rabbi Mishulovin had two sons that Mr. Yomtov privately tutored between 1995 and November 2001. Rabbi Mishulovin's sons never indicated that Mr. Yomtov was molesting any child. If Rabbi Mishulovin had even suspected such activities, he would have taken immediate action to protect his children.

In opposition to the summary judgment motions, plaintiffs did not dispute any of the alleged undisputed facts asserted by defendants. Rather, plaintiffs relied on the declaration of Phyllis S., the other parent who initially reported the molestation of her son to Rabbi Mishulovin. Phyllis's declaration was filed in support of a motion to compel disclosure of the financial information pursuant to section 3295, subdivision (c). Phyllis's declaration stated, among other things, that she worked as a volunteer in the school's financial office from October 1998 until March 1999. Phyllis had spoken on November 10, 2001, with the school secretary, Ms. Lipskier. The school secretary related that: She and Rabbi Greenbaum had been "watching" Mr. Yomtov for several weeks; the two of them were "very concerned about one boy in particular"; and they had contacted a private detective to place video cameras in

Mr. Yomtov's classroom on Sunday November 11, 2001 in order to "catch him." Phyllis further declared: "On November 12, 2001, Rabbi Greenbaum admitted to me that he had learned of [Miriam's and Hilton's] suspicions of sexual abuse back in March of 2001 and that he had immediately prohibited Yomtov from locking the students in the classroom. He told me that he told Yomtov that the students must be allowed out at recess 'for fresh air.' Rabbi Greenbaum stated that he took such action as a result of his consultations with [the rabbinical supervisory board to the Cheder] about [Miriam's and Hilton's] concerns of sexual abuse. . . . [¶] Subsequently, when I confronted Rabbi Yosef Mishulovin about Rabbi Greenbaum's statements, he did not deny them nor did he claim that he was unaware of [Miriam's and Hilton's] concern that Mr. Yomtov was molesting students." Judge J. Stephen Czuleger found that plaintiffs, who had sued the school and its employees, were likely to prevail on their punitive damage claim and permitted discovery of the financial condition of the school and Rabbi Greenbaum pursuant to section 3295, subdivision (c).

Plaintiffs requested that Judge Feffer judicially notice Phyllis's declaration. Judge Feffer refused to judicially notice Phyllis's declaration on the ground her declaration was submitted for the truth of its content. Eventually, Judge Ronald M. Sohigian entered judgment against plaintiffs in favor of Rabbi Mishulovin, Rabbi Greenbaum, and the school on March 29, 2005. After Judge Feffer denied new trial motions on June 1, 2005, plaintiffs filed this appeal from the judgment on June 30, 2005.

## III. DISCUSSION

### A. *The Standard of Review*

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], our Supreme Court described a party's burdens on summary judgment motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the

existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 871, 878 [116 Cal.Rptr.2d 158].) We review the trial court's decision to grant the summary judgment motion de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 853, fn. 19.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale. (*Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196 [133 Cal.Rptr.2d 199]; *Dictor v. David & Simon, Inc.* (2003) 106 Cal.App.4th 238, 245 [130 Cal.Rptr.2d 588].) In addition, a summary judgment motion is directed to the issues framed by the pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Those are the only issues a motion for summary judgment must address. (*Turner v. Anheuser-Busch, Inc., supra*, at p. 1252; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364 [17 Cal.Rptr.3d 39].)

### B.   *Section 3295, subdivision (c)*

Plaintiff's sole contention on appeal is that Judge Czuleger's financial condition discovery rulings which implicitly found that there was a "substantial probability" other plaintiffs would prevail in their molestation based claims against the school and other defendants, "precluded" Judge Feffer from granting the present summary judgment motions. Plaintiffs, in their briefs, have not asserted nor identified any triable issues of material fact which prevented Judge Feffer from granting the summary judgment motion apart from the asserted preclusive effect of Judge Czuleger's financial condition discovery ruling. Therefore, plaintiffs have waived the right to assert any other grounds for a reversal of the judgment. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey v. County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449].)

In support of their contention that Judge Czuleger's financial condition discovery ruling was entitled to preclusive effect, plaintiffs rely on section 3295, subdivision (c), which states in part: "No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) unless the court enters an order permitting such discovery pursuant to this subdivision. However, the plaintiff

may subpoena documents or witnesses to be available at the trial for the purpose of establishing the profits or financial condition referred to in subdivision (a), and the defendant may be required to identify documents in the defendant's possession which are relevant and admissible for that purpose and the witnesses employed by or related to the defendant who would be most competent to testify to those facts. Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294." Plaintiffs reason Judge Czuleger found there was a substantial probability other litigants would prevail on their punitive damage claims. Hence, plaintiffs argue that Judge Feffer was bound by the "substantial probability ruling" and could not grant the three summary judgment motions. In plaintiffs' view, it is inconsistent on one hand for a court to rule there was probability the other litigants would prevail on their punitive damage claims, as established by Judge Czuleger's rulings, and for there to be no triable issue of fact as later found by Judge Feffer.

This contention has no merit. Section 3295, subdivision (c), after referring to an order granting a plaintiff permission to conduct financial discovery, concludes, "Such order shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial." This provision of section 3295, subdivision (c), is controlling. Judge Czuleger's discovery ruling was entitled to no preclusive effect. In *Jabro v. Superior Court* (2002) 95 Cal.App.4th 754, 759 [115 Cal.Rptr.2d 843], our colleagues in Division One of the Fourth Appellate District explained: "[S]ection 3295(c) concerns a defendant's right to privacy and protection from being forced to settle unmeritorious lawsuits in order to protect this right. It is a discovery statute and does not implicate the traditional factfinding process or the right to a jury trial in any way. Indeed, section 3295(c) expressly states that an order thereunder 'shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial.' (§ 3295(c).)" Judge Feffer correctly concluded Judge Czuleger's financial discovery rulings were not entitled to preclusive effect in connection with defendants' summary judgment motions.

C. *The Peremptory Challenges*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante*, page 1406.

## IV. DISPOSITION

The judgment is affirmed. Defendants, Cheder Menachem, Inc., Joseph Mishulovin, and Menachem Mendel Greenbaum, are to recover their costs incurred on appeal jointly and severally from Hilton and Miriam K., individually and as the guardians ad litem of the minor.

Armstrong, J., and Mosk, J., concurred.