Filed 1/30/14  Testacross v. Santa Anita Church CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOANNE TESTACROSS, | B248319 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC048293) |
| v. | |
| THE SANTA ANITA CHURCH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Affirmed.

Law Office of J. Lawrence David and Larry David for Plaintiff and Appellant.

Berman Berman Berman Schneider & Lowary, James W. McCord and Karen E. Adelman for for Defendants and Respondents.

_____

This appeal arises from a former employee's action alleging breach of a written employment agreement by the act of terminating employment. The fundamental issue in the case is whether the employment agreement allowed the defendant employer, a private church school, to terminate the employee with or without cause. The trial court entered summary judgment in favor of the defendant employer and certain members of its board of trustees. Plaintiff former employee appeals. We affirm.

## FACTS

### *The Original Written Employment Agreement*

Defendant The Santa Anita Church operates defendant Barnhart School, a kindergarten through 8th grade school located in Arcadia. Defendants James E. Anderson and Paul Savoie are members of Barnhart's board of trustees. Defendant Terry Keenan is the church's senior minister and an ex officio member of Barnhart's board of trustees.

In March 2007, Barnhart and plaintiff Joanne Testacross executed a nine-page written employment agreement. The agreement stated an effective date of July 1, 2007. Section 1(a) of the employment agreement provided that Barnhart would employ Testacross in the position of "Head of School," and that Testacross accepted the employment, for an "Initial Term" from July 1, 2007 through June 30, 2009.

Section 1(b) of the employment agreement provided that, at the discretion of the Barnhart Board of Trustees, the agreement could be "renewed and extended for a period of one or more years" provided that the board advised Testacross of its desire and intent to renew and extend the agreement by no later than June 30, 2009. Further, Section 1(b) provided: "In no event . . . shall this agreement, including [Testacross]'s employment with Barnhart, extend beyond June 30, 2009, absent further express written agreement between the parties hereto respecting further continuation of [Testacross]'s employment with Barnhart, and no provision in this section or in this agreement may be construed to extend such employment beyond June 30, 2009."

2

Section 4 of the employment agreement governed "Termination of Employment." Section 4 specified five circumstances in which Testacross's employment with Barnhart would be or could be terminated. For example, Testacross's employment would be terminated by her death, or by disability preventing her, after reasonable accommodation, from performing her duties. Under Section 4(c), Barnhart could terminate Testacross's employment "for cause," with defined grounds constituting cause. Under Section 4(d), Testacross could terminate her employment for "good reason," including any material breach by Barnhart of its obligations to Testacross.

The fifth circumstance for termination of employment is found in Section 4(e) of the employment agreement. Section 4(e) reads:

> "For Other Than Cause or Death or Disability. [Barnhart] or [Testacross] may terminate [her] employment at any time upon ninety (90) days written notice to the other party." (Underscoring in original.)

*Subsequent Events*

In Paragraph 14 of her operative first amended complaint, Testacross alleged: "In or about May 2009, [Barnhart] and Ms. Testacross *renewed* Ms. Testacrosss['s] employment agreement." (Italics added.) In their answer, the defendants admitted the truth of this "renewed" allegation.[1] At Testacross's deposition in her current lawsuit, she testified that she signed a document (of an unidentified nature) related to her employment "approximately around . . . July 2009." At the time of her deposition, she testified that she had only one page of the document that she signed in July 2009, and that it had been produced. In her opening brief on appeal, Testacross makes reference to a "Renewal Contract" executed "in or about May 2009," but her references to the record on appeal do not show such a contract or its terms. She concedes in her opening brief: "No complete

---

[1]    No end date is alleged for the "renewed" agreement; no terms are alleged for the "renewed" agreement. In light of the judicial admissions in the pleadings, we accept that Testacross and Barnhart renewed her employment agreement sometime around May 2009. Given the context of the pleadings, it appears that, in May 2009, the employment agreement dated July 1, 2007 was "renewed" for an unstated term.

copy of the Renewal Contract was ever presented to the lower court by either party in this matter." Also in Paragraph 14 of her operative first amended complaint, Testacross alleged: "On or about September 14, 2010, [Barnhart] *extended* Ms. Testacross's employment agreement . . . ." (Italics added.) Again, the defendants admitted her allegation. The extension of the employment agreement in September 2010 was accomplished by a document which we discuss next.

On September 14, 2010, Testacross and Barnhart (by defendant Anderson, acting as "School Board President") executed a writing entitled "Agreement of Understanding." The substantive text of this document, in its entirety, reads as follows:

> "Joanne Testacross has agreed to extend her contract as Head of School through the 2011-2012 school year as determined by the School Board of Trustees and her mutual agreement. [¶] *Based upon this agreement* and this year's targeted goals, Joanne Testacross will receive an increase in compensation by 8%, resulting in an annual salary of $155,606. The car allowance is not included in this total. Salary is effective from July 1, 2010." (Italics added.)

### *Termination*

On May 5, 2011, Barnhart, acting through defendants Anderson and Savoie, told Testacross that it was terminating her employment with the school effective in 90 days. At the same time on the same date (May 5), Barnhart, by Anderson and Savoie, advised Testacross that she was relieved of her duties immediately, and demanded or asked that she surrender her keys, which she did. Barnhart continued to pay Testacross through August 2011, based on her annual salary, pro-rated for 90 days.

### *Litigation*

Testacross commenced an action against the church, Barnhart, Anderson, Savoie and Keenan. She filed her operative first amended complaint alleging the following causes of action, listed respectively: breach of contract; breach of the covenant of good faith and fair dealing; defamation; and intentional infliction of emotional distress (IIED).

4

Her operative pleading alleges that Barnhart breached their employment agreement by the actions of Anderson and Savoir on May 5, 2011 as stated above.

The church, Barnhart, Anderson, Savoie and Keenan (hereafter collectively Barnhart) filed a motion for summary judgment (MSJ) or, in the alternative, summary adjudication of each of Testacross's four causes of action. As to the contract-related causes of action, the MSJ argued that Testacross could not prevail because she could not demonstrate breach – the contract of employment as shown by the written employment agreement gave Barnhart the right to terminate employment at will, without any cause. As to Testacross's cause of action for defamation, the MSJ argued that she had no evidence that any defendant ever made any defamatory statement about Testacross. As to the cause of action for IIED, the MSJ argued that there had never been any outrageous conduct on the part of any defendant.

Thereafter, Testacross dismissed her causes of action for defamation and IIED. The parties argued the merits of Barnhart's MSJ to the trial court; the court signed and entered an order granting Barnhart's MSJ and entered judgment in favor of Barnhart.

Testacross filed a timely notice of appeal.

## DISCUSSION

### I.    Summary Judgment —— Disputed Facts

Testacross contends summary judgment must be reversed because material issues of fact are in dispute. Specifically, she claims that it is uncertain what was contained in her employment contract.[2] In this vein, Testacross argues that the agreement of understanding dated September 14, 2010, did not incorporate the written employment agreement dated July 1, 2007. She cites the following rule of law in support of her argument: for terms in one document to be incorporated into a second document executed by the parties, the incorporating reference must be "'clear and unequivocal.'" (*Wolschlager v. Fidelity National Title Ins. Co.* (2003) 111 Cal.App.4th 784, 790.) The failure to incorporate the July 1, 2007 employment agreement, argues Testacross, means

---

[2]    Testacross's argument on appeal is consistent with her pleadings in the sense that she plainly is asserting a claim for breach of a written contract.

5

"there exists a material question of fact as to what the employment contract between [her] and [Barnhart] was a the time [she] was fired . . . ." Testacross seems to be arguing there *might be* a contract document or documents or oral contract which governed her employment at Barnhart, apart from or in addition to the employment documents dated July 1, 2007 and September 14, 2010. She may be referring to a so-called "Renewal Contract" which she discusses in her briefs on appeal. We are not persuaded to reverse summary judgment on this argument.

Barnhart's MSJ presented evidence showing the employment agreement documents governing the parties' employment relationship, namely, the written employment agreement dated July 1, 2007 and the written agreement of understanding of September 14, 2010. Based on this showing, Barnhart argued it had the contract right to terminate Testacross's employment without cause, pointing to Section 4(e) of the July 1, 2007 employment agreement. (*Ante.*) For her part, Testacross has never produced or shown, either in her pleadings or in any materials submitted for and against Barnhart's MSJ or in any of her arguments on appeal, any contract document or oral contract apart from or in addition to the employment documents dated July 1, 2007 and September 14, 2010. Further, she has never specifically shown or even stated the terms from any contract apart from or in addition to the employment documents dated July 1, 2007 and September 14, 2010. In sum, Testacross has never presented evidence showing the existence of a contract document or oral contract or contract term, apart from the employment documents dated July 1, 2007 and September 14, 2010, which denied Barnhart the contract right to terminate her without cause.

The judicially established fact, made by her own admission, was that in May 2009, Barnhart and Testacross "renewed" their employment agreement. This leads inextricably to the conclusion that as of May 2009, we are back to the employment agreement dated July 1, 2007 as the governing employment agreement document upon which Testacross's breach of contract claim in her complaint is based. A "renewed" agreement is not a "new" agreement. And, the judicially admitted fact that, in September 2010, Barnhart "extended" Testacross's employment agreement brings us to the same place.

But even if we followed Testacross's "lack of incorporation" rule of law, this means that, as of September 2010, there was no July 1, 2007 employment agreement in place. As a result, the parties' employment relationship would be governed by terms imposed by law, rather than by the terms of any written or oral employment agreement. But this cannot be where Testacross means to take us by with her argument. In the absence of any written or oral contract entered into by the parties, Testacross's breach of contract claim alleged in her complaint makes no sense. And, if she is claiming a breach of a contract obligation imposed by law, then her claim of a breach is fatally flawed because the law presumes employment is at will. (Lab. Code, § 2922.)

In the end, we find that Testacross cannot defeat summary judgment by offering that there *might be* some unidentified contract that would support her breach of contract claim. That some contract "might exist" does not equate with a dispute in the evidence. Even if we deemed the evidence to be in state of equipoise on a matter upon which Testacross must establish by a preponderance of the evidence at trial -- that there was a governing employment agreement -- then summary judgment was properly granted against Testacross because no reasonable trier of fact could find in her favor. (See *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 857.) For all of these reasons, we conclude that summary judgment must be evaluated in light of the terms contained in the July 1, 2007 employment agreement for the reason that it is the contract document underpinning Testacross's breach of contract claim.

## II.     Summary Judgment – Contract Interpretation

Testacross next contends summary judgment must be revered because the trial court erred in interpreting the July 1, 2007 employment agreement. Specifically, she argues the court erred in construing the agreement to give Barnhart a contractual right to terminate her employment "at will;" she argues "the parties' express intention was that termination would be 'for cause' . . . ." We find no contract interpretation error.

Testacross's initial argument is that Sections 1(a) and 1(b) of the employment agreement of July 1, 2007 show "the parties expressed their intention to limit any 'at will' presumption . . . ." Testacross's argument is not persuasive because she has done little

7

more than quote the language of Sections 1(a) and 1(b), and neither of those provisions contain any language concerning whether or not Barnhart could or could not terminate Testacross's employment with or without good cause. The provisions in Sections 1(a) and 1(b) concern only the initial term, i.e., the length in time, of the parties' employment agreement, and the rules for renewing and extending the agreement. None of the legal authorities cited by Testacross support the proposition that the parties to a contract for a stated period of time may not further agree on provisions for terminating the agreement short of — and other than by — the expiration of the period of time for the contract. If such termination provisions exist, a provision restricting termination "only for cause" is not reasonably implied. And, as noted above, Section 4 of the employment agreement here between Barnhart and Testacross contains provisions concerning what can trigger termination of the agreement.

Testacross next argues that the July 1, 2007 employment agreement contains "conflicting at-will and for-cause termination provisions" and that these conflicting provisions result in ambiguity. She argues that this ambiguity "preclude[s] summary judgment as interpretation created material issues of fact." Apparently, Testacross believes that an evidentiary exposition at trial is necessary to allow the trial court to interpret the meaning of the parties' employment agreement correctly. We do not agree.

Testacross argues there is ambiguity in the July 1, 2007 employment agreement because "there were clearly two interpretations of the same Alleged Contract *asserted by* the parties." (Emphasis added.) Testacross's argument is misdirected. She is correct that two interpretations of the employment agreement of July 1, 2007 were "asserted by" the parties, but this does not necessarily establish that there is a true ambiguity. This is so because Barnhart's asserted interpretation made sense, whereas Testacross's did not. A contractual provision is ambiguous when it is susceptible to more than one *reasonable* interpretation. (See, e.g., *Continental Ins. Co. v. Superior Court* (1995) 37 Cal.App.4th 69, 82.) But a court may not label a contract provision ambiguous in isolation and in the abstract; rather, a court must construe the provision in relation to the contract as a whole,

8

with each clause giving meaning to the other.  (*Ibid*.)  That parties *assert* two different interpretations does not necessarily mean there are two reasonable interpretations.

Testacross asserts that Section 4(e) in the employment agreement is ambiguous. As noted above, Section 4(e) reads as follows:

> "<u>For Other Than Cause or Death or Disability</u>.  [Barnhart] or [Testacross] may terminate [Testacross]'s employment at any time upon ninety (90) days written notice to the other party."

She argues it is ambiguous because it conflicts with another provision of the employment agreement (see Section 4(c)) which states that it may be terminated "for cause."  We do not see any ambiguity.

Section 4(e) plainly says that Barnhart could terminate Testacross's employment (and vice versa) "for other than cause," "at any time," upon giving 90 days notice.[3]  The language in Section 4(e) is not at all ambiguous on its face.  It says what it says.  Even if we were abstractly inclined to accept Testacross's verbal formulation that the phrase "at any time" is ambiguous in that it does not expressly state whether cause is required (but see *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391), such a construction is simply impossible here because the Section 4(e)'s introductory, underscored language explains that both parties had the contract right to terminate the employment agreement "for other than cause."  Testacross's argument that Barnhart needed cause to termination is belied by the plain language of Section 4(e).

---

[3]    Barnhart's MSJ does not appear to have presented evidence that it gave "written notice" to Testacross on May 5, 2011.  Then again, Testacross's operative pleading does not expressly allege a failure to give *written* notice as a breach, and none of Testacross's arguments in the trial court in opposition to the MSJ or on appeal in opposition to the trial court's decision to grant the MSJ are based on a claim that a failure to give *written* notice constituted a breach.  The claim here is that termination of employment had to be based on "cause."  A MSJ is directed to the issues framed by the pleadings as those are the only issues an MSJ must address.  (*Hilton K. v. Greenbaum* (2006) 144 Cal.App.4th 1406, 1412.)

9

In addition, we find that no ambiguity is created in Section 4(e) based on Section 4(c). Testacross's argument that 4(e) and 4(c) "conflict" is simply wrong. The parties' employment agreement expressly provided that it would be or could be terminated in five circumstances, to wit: (1) death; (2) disability; (3) for cause; (4) for good reason; and (5) "<u>For Other Than Cause or Death or Disability</u>." (Underlining in original.) Each of these circumstances stands on its own, independently of the others; none conflicts with any of the others. The existence of alternatives, alone, does not create ambiguity, and certainly does not do so in the particular written agreement involved in the current case.

Although the parties' subjective intentions are not governing where, as here, contract language is plain and unambiguous; we observe that in the context of the operation of a private school, providing alternative bases for termination of an employment agreement make sense. First, such a school may reasonably terminate a head of the school for cause, e.g., when he or she is convicted of a felony. If the school were to invoke this ground, no 90 day notice would be needed. Second, such a school or such a head of the school may reasonably determine that "things are just not working out." Where, as here, both a school employer and a school employee have an express mutual contract right to walk away from the other upon giving 90 days notice, we will not read any contrary, more restrictive, provision into their employment agreement.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

BIGELOW, P. J.

We concur:

RUBIN, J.          GRIMES, J.

10