Filed 12/28/15 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHNNEISHA KEMPER, | D066289 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2010-00094975-CU-PN-CTL) |
| v. | |
| COUNTY OF SAN DIEGO et al., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING AND REQUEST TO CHANGE PUBLICATION STATUS |
| Defendants and Respondents. | |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed on December 4, 2015, be modified as follows:

At the end of the first complete paragraph on page 21, the following footnote 5 is added, which will require renumbering of all subsequent footnotes:

5    Contrary to Kemper's assertion in a rehearing petition, we are not suggesting any new duty on an appellate counsel in a dependency action. Given the strict deadlines in juvenile dependency actions and the state's strong interest in expediting these proceedings, if an appellate counsel is aware of facts outside the record that would support an ineffective assistance of counsel claim, the counsel should advise the client of this fact and consider raising the issue by habeas corpus petition. If necessary, an appointed counsel may petition to expand his or her appointment. Kemper's citation to decisions in the criminal habeas context are unhelpful on this issue.

Appellant's petition for rehearing is DENIED. Appellant's request to change the publication status to nonpublished is DENIED.

**There is no change in the judgment.**

BENKE, Acting P. J.

Copies to: All parties

Filed 12/4/15  (unmodified version)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHNNEISHA KEMPER, | D066289 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00094975-CU-PN-CTL) |
| COUNTY OF SAN DIEGO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Law Offices of Shawn A. McMillan and Shawn A. McMillan, Stephen D. Daner, Samuel H. Park, and Dennis B. Atchley, for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, Ricky R. Sanchez and Stephanie Karnavas, Deputy County Counsel, for Defendants and Respondents.

Five years ago, this court affirmed a judgment terminating Johnneisha Kemper's parental rights to her daughter, rejecting Kemper's contention that claimed ineffective assistance by her appointed juvenile dependency attorneys *caused* the termination of her

parental rights.[1]  Kemper then brought a legal malpractice action against the same appointed juvenile dependency attorneys (Thomas Kisiel and Tracy De Soto), their supervising attorney (Robert Gulemi), and the County of San Diego (County).[2]  She alleged defendants' legal representation breached the applicable standard of care and caused the termination of her parental rights.  Defendants moved for summary judgment based on the collateral estoppel doctrine.  The court granted the motion and entered judgment in defendants' favor.

Kemper appeals.  We affirm.  Causation is an essential element of a legal malpractice claim, and Kemper is barred by the collateral estoppel doctrine from relitigating the issue of whether her juvenile dependency attorneys caused the termination of her parental rights.  We decline Kemper's request that we create a new exception to the collateral estoppel rule based on an analogy to the writ of habeas corpus procedure applicable in juvenile dependency cases.

FACTUAL AND PROCEDURAL SUMMARY

I. *Summary of Dependency Proceedings*

In May 2008, 16-year-old Kemper gave birth to a daughter, NF.  When the baby was less than two weeks old, San Diego police officers removed the child from Kemper's care.  Four days later, the San Diego County Health and Human Services Agency

---

[1]  *In re N.F.* (June 29, 2010, D055922) [nonpub. opn.] (*N.F.*).

[2]  The three attorneys were employed by the Office of the Alternate Public Defender, a division of the County.

2

(Agency) filed a juvenile dependency petition under Welfare and Institutions Code section 300, subdivision (g), alleging the infant was at substantial risk of harm because she had been abandoned by the mother; the mother's whereabouts were unknown; and reasonable efforts to find the parents had been unsuccessful.[3] The next day, the trial court made a prima facie finding on the petition and detained the child in out-of-home care.

About three weeks later, on June 18, the court held a jurisdiction and disposition hearing. At the outset, Agency social worker Mark Hood informed the court that the mother (Kemper) had called his office to say she was on her way to court from Los Angeles. The court then trailed the matter until 1:30 in the afternoon. When Kemper had not arrived by 2:10 p.m., the court resumed the hearing, sustained jurisdiction under section 300, subdivision (g), declared NF a dependent child, and removed her from parental custody. The court did not appoint counsel for Kemper because she had not yet appeared in the action.

Shortly after the hearing, Kemper and the baby's alleged father arrived in the courtroom. The court clerk gave them Hood's phone number. The court scheduled a special hearing for the next month to appoint counsel for both parents.

---

[3] All further statutory references are to the Welfare and Institutions Code. All rule references are to the California Rules of Court.

On July 15, Kemper appeared at the continued hearing and the court appointed counsel for her (defendant De Soto).[4] De Soto said she had discussed Kemper's "constitutional, trial and statutory" rights with Kemper, and Kemper understood those rights. When the court asked about the appointment of a guardian ad litem, De Soto said she had spoken with Kemper and both she and Kemper believed a guardian ad litem was not necessary. De Soto requested that the court facilitate services in the Los Angeles area where Kemper lived, and the Agency's counsel agreed it was appropriate to do so (at least with respect to ordered therapy). The court spoke directly to Kemper about the importance of complying with the ordered services in a timely fashion.

About eight months later, in February 2009, the court held a contested six-month review hearing. Kemper was present and represented by defendant Kisiel. At the hearing, the Agency submitted two social worker reports, and requested termination of reunification services based on evidence showing Kemper had only minimally participated in services and visitation. Kisiel did not present any affirmative evidence or cross-examine the social workers, but requested the court continue services for Kemper, arguing Kemper's progress had been sufficient; she had appeared for court hearings; she had made progress in parenting classes; she had engaged in therapy; and she had made best efforts to comply with the plan despite living in Los Angeles County.

NF's counsel requested that the court follow the Agency's recommendation, emphasizing Kemper's repeated failure to participate in reunification services.

---

[4] At the time De Soto's last name was Schmidt.

At the end of the hearing, the juvenile court rejected Kisiel's arguments, terminated reunification services, and set a section 366.26 selection and implementation hearing. The court found Kemper had received adequate services, but had not made substantial progress with her case plan and there was no substantial probability of NF's return to her parents' physical custody in the next six months.

Kemper signed a notice of intent to file a writ petition challenging this order (see rules 8.450, 8.452), but after Kisiel's supervisor, defendant Gulemi, reviewed the record and spoke with Kisiel, Gulemi determined there were no viable issues for review. In March 2009, Gulemi communicated this conclusion to Kemper by letter, and told her to call him collect if she had any questions or concerns.

This same month, Kemper was arrested and became a dependent of the Los Angeles County juvenile court, which placed her into foster care. While in foster care, Kemper gave birth to another child.

Kemper's San Diego County case was then transferred to another attorney in the same office, Sharon MacGillis. After reviewing the file, MacGillis requested that supervisor Gulemi transfer the case to an independent attorney, believing there had been substantial problems with the legal representation in the case. Gulemi declined to approve the transfer, and instructed MacGillis to instead file a section 388 motion challenging the factual and legal support for the prior orders and presenting evidence of Kemper's recent progress in accepting responsibility and taking care of herself.

In May and August 2009, MacGillis filed the section 388 modification petitions, arguing (1) the court prejudicially erred in failing to appoint a guardian ad litem at the

July 2008 hearing; and (2) Kemper's improved circumstances supported an extension of reunification services or return of the child. On the second ground, MacGillis admitted Kemper had been "unstable," but argued and presented evidence that her circumstances had changed because she was now in foster care in Los Angeles, enrolled in school, attending parenting classes, living with a supportive foster mother, and providing excellent care to her new second child.

The juvenile court found Kemper made a prima facie case supporting both grounds for the motions, and then held a combined hearing on the two section 388 petitions and the section 366.26 reference. At this hearing, the court received into evidence all of the Agency's reports and the minute orders from the prior hearings, including the detention and jurisdiction hearings. Several witnesses testified, including Kemper, her foster mother, social worker Hood, and a Riverside County social worker in Kemper's dependency case. At the conclusion of the evidence and argument, the juvenile court found that although a guardian ad litem should have been appointed and this "error was not harmless, . . . the requested modification was not in [the child's] best interests because [Kemper] could not safely parent [her child]." (*N.F., supra*, D055922.) The court thus denied the section 388 motions, and entered a final judgment terminating Kemper's rights.

Kemper filed a notice of appeal and an appellate attorney was appointed to represent her.

6

## II. N.F. *Appellate Decision*

On appeal in the *N.F.* case, Kemper's appellate counsel challenged the orders denying Kemper's section 388 motions and the judgment terminating her parental rights. On the section 388 issues, counsel argued the juvenile court abused its discretion in refusing to return the child to Kemper based on the court's earlier failure to appoint a guardian ad litem and based on her new and improved circumstances. In challenging the judgment terminating parental rights, Kemper's counsel argued the judgment was the result of Kemper's appointed counsel's ineffective assistance in the proceedings below. Kemper's counsel identified three instances of alleged deficient representation: (1) the failure to challenge the jurisdictional findings under section 300, subdivision (g); (2) waiving appointment of a guardian ad litem; and (3) failing to raise these issues in a writ petition filed after the six-month hearing in which the court terminated reunification services. (*N.F., supra*, D055922.)

In June 2010, this court filed *N.F.*, rejecting Kemper's appellate contentions and affirming the court's section 388 orders and parental-termination judgment. (*N.F., supra*, D055922.) On the section 388 issues, we held the juvenile court erred in not appointing a guardian ad litem and the appointment "may have made a difference in the outcome of the jurisdiction and disposition hearings," but the juvenile court "acted well within its discretion" in denying the section 388 motion because a custody change was not in the child's best interests. (*N.F., supra.*) We also held the juvenile court did not abuse its discretion in concluding that Kemper remained unable to safely parent NF and in finding that Kemper was not a parental figure to NF. (*Ibid.*)

7

We rejected the ineffective assistance claim on two grounds. (*N.F., supra*, D055922.) First, we stated the record "does not affirmatively establish counsel had no rational tactical purpose" for the alleged deficient performance, and therefore the claim was not cognizable on appeal. (*Ibid.*) Second, we stated that "More importantly, we cannot say the outcome—termination of parental rights—would have been different had counsel provided what mother believes was effective representation." (*Ibid.*) We explained:

> "Regardless of counsel's alleged failings . . . , the Agency was justified in filing a dependency petition, and the court reasonably assumed jurisdiction of [Kemper's child]. [Kemper] left [her] newborn . . . without provision for support, and chose her relationship with father over her relationship with her child. . . . [Kemper's] ongoing irresponsible behavior and lack of motivation to participate in services or establish a relationship [with her child] prevented reunification. Once her situation stabilized and she began to access services, [Kemper] was never able to show she could properly parent [her child]. The remedy [Kemper] seeks— dismissing the petition or placing [her child] with her under a voluntary services contract—is not a viable option. [¶] Despite the fact that this case got off track initially when [Kemper] had no representation, it was ultimately [Kemper's] inability or unwillingness to reunify with [her child] that caused her to lose her parental rights. [Kemper's child] is now two years old and has never lived with [Kemper]. She is thriving in the home of maternal relatives who want to adopt her. [The child] deserves to have her custody status promptly resolved and her placement made permanent and secure." (*Ibid.*)

### III. *Kemper's Current Malpractice Action*

#### A. *Complaint*

Shortly before *N.F.* was filed, Kemper brought a legal malpractice action against her two former appointed attorneys (De Soto and Kisiel) and their supervising attorney

8

(Gulemi).  She alleged defendants acted below the standard of care by:  (1) waiving her right to a guardian ad litem; (2) submitting and failing to object to jurisdiction, even though Kemper's whereabouts were known when the petition was filed and Kemper did not abandon her child; (3) allowing a case plan to be put in place that "was doomed to fail"; (4) failing to pursue a writ or appeal challenging the court's jurisdiction and reunification findings; and (5) failing and refusing "to file and/or pursue a writ of habeas corpus" *after* the court terminated her parental rights.  Kemper also alleged defendants "failed to communicate with [her] in relation to important aspects of her case, and made extremely important strategic and tactical decisions and mistakes, as well as critical omissions . . . ."  Kemper alleged that as a "direct and proximate result [of these actions], [she] permanently lost custody of, and contact with, her infant daughter forever."  Kemper said that she "does not seek to overturn the Juvenile Court orders terminating her parental rights.  Rather, [she] seeks money damages for the injury suffered as a result of the incompetence of her juvenile dependency counsel."

B.  *Summary Judgment Motion*

Defendants moved for summary judgment based on the collateral estoppel doctrine.  Defendants maintained that the *N.F.* court found the same claimed ineffective assistance *did not cause* the termination of Kemper's parental rights, and under collateral estoppel rules, Kemper is bound by that finding in her legal malpractice action.  In support, defendants submitted minute orders from the juvenile court proceedings; the appellate briefs in the *N.F.* appeal; the reporter's transcripts of the July 15, 2008 hearing appointing De Soto as counsel; the reporter's transcript of the February 19, 2009 six-

9

month review hearing; and the *N.F.* opinion.  The facts contained in these documents are summarized above.

### C.  *Opposition to Summary Judgment Motion*

Kemper opposed the summary judgment.  She argued the collateral estoppel doctrine was inapplicable because the *N.F.* court rejected the ineffective assistance claim based solely on the appellate record, and did not consider additional relevant evidence that could or would have been submitted in a habeas corpus petition.  To support this argument, Kemper submitted various items of this "additional" evidence.

First, she submitted her own declaration, detailing the underlying circumstances from her viewpoint.  In summary, Kemper said that when she was 15 years old she became pregnant with NF.  At the time, she lived in Compton (in the Los Angeles area) with her boyfriend and her boyfriend's mother, who was her "legal guardian."  Kemper said she had prenatal care and was prepared to care for and raise her child with the help of her boyfriend's family and another woman who was living in the same residence.

Although Kemper said she did not live in San Diego (and had never lived in San Diego), the baby was born in San Diego when she was visiting her biological mother.  Within several days, the baby was taken by police officers when she and her mother had an argument, even though she was prepared to care for her baby.  At the time, she gave the police officers her Compton address and a phone number contact.  Because she had no place to stay in San Diego, Kemper went back to Los Angeles and then made numerous unsuccessful attempts to locate her baby.  She did not attend the May 29 detention hearing because she was never given notice of this hearing.  But later that day,

10

Kemper had a telephone conversation with social worker Hood during which she confirmed her Compton address and that she was living with her legal guardian. Kemper said she told Hood she "would do anything to get [her daughter] back" and that she "was ready, willing, and able to care for [her] daughter." Based on these facts, Kemper claimed that at the time of the jurisdiction hearing, Hood knew of her whereabouts and knew she had not abandoned her baby, and should have disclosed this information to the court.

With respect to the July 15 hearing at which the court appointed De Soto to represent her, Kemper said: "I . . . told [De Soto] that I did not understand the allegations being level[ed] against me, what was happening in the juvenile dependency proceedings, why I had to appear in the juvenile court, and why my baby was still being kept from me. . . . [¶] . . . [¶] . . . De Soto never explained the function of a Guardian Ad Litem to me, and never asked whether I needed a Guardian Ad Litem appointed for me . . . . [De Soto's waiver of a guardian ad litem] was done without my knowledge, understanding, or consent. . . . [¶] . . . [¶] . . . De Soto did not challenge or deny the allegations contained in the juvenile dependency petition [or] . . . the fact that I was never provided notice of the Detention Hearing. . . ."

Regarding attorney Kisiel, Kemper said that Kisiel never explained the status of the case to her or assisted her with reunification efforts. Kemper additionally said that at the six-month hearing Kisiel also represented her boyfriend (the presumed father) without obtaining an informed waiver of a potential conflict. She said that Kisiel did not challenge the truthfulness of the social worker's statements at this hearing even though

11

she had informed Kisiel of (unspecified) false information in the reports and (unspecified) material omissions from the reports. Kemper attached the letter she received from supervisor Gulemi in March 2009 indicating her attorneys would not be bringing a writ petition to challenge the termination of her reunification services.

Kemper also submitted a July 11, 2009 memorandum from attorney MacGillis to defendant Gulemi, suggesting that Kemper's prior counsel had been incompetent in failing to challenge the "bogus" section 300, subdivision (g) jurisdictional finding, and in failing to file a writ petition after the court denied reunification services at the six-month hearing. In the memorandum, MacGillis recognized that Kemper had "failed miserabl[y]" to comply with her reunification plan, but noted Kemper was a minor herself who needed assistance. The memorandum concludes: "I think that there are huge problems . . . what to do?" MacGillis attached a " 'Three-alarm fire' " sticker to the memorandum, reflecting her view that the prior legal representation had been problematic.

Consistent with this evidence, MacGillis testified at her deposition (taken in the malpractice action) that shortly after she was assigned to the case, she told supervisor Gulemi that she thought there was a conflict with continuing the representation because of the manner in which prior counsel had handled the matter, and she wanted to transfer the case to independent counsel. Gulemi denied this request and instructed her to remain on the case and to raise the issues in a section 388 motion, which she did.

Kemper also submitted the deposition testimony of several other individuals, including social worker Hood and attorneys Gulemi, De Soto, and Kisiel. At his

12

deposition, Hood acknowledged that no Agency social worker ever visited Kemper's Compton home and that he was aware of Kemper's Compton home address before the court sustained the jurisdictional allegations of parental abandonment. At his deposition, Kisiel acknowledged he did not investigate the validity of the jurisdictional finding; he never interviewed social worker Hood or informed Kemper of her right to challenge the jurisdictional finding; at the six-month hearing, he did not cross-examine the social worker or present affirmative evidence; and he was aware Kemper wanted custody of her daughter to be returned to her. At her deposition, De Soto essentially testified consistent with the record of the July 15 hearing, and/or that she did not recall specific conversations with Kemper. At his deposition, Gulemi agreed that his office never specifically challenged the jurisdictional finding and acknowledged a court may dismiss a dependency petition if a jurisdictional allegation is untrue. He said he made the decision that there were no legal or factual grounds to challenge the court's order terminating reunification services.

Kemper also proffered the expert declaration of Nicole Williams, an attorney who specializes in juvenile dependency appellate practice. Williams opined that Kemper's attorneys breached the standard of care in numerous ways, including (1) De Soto failed to timely challenge the factual basis for the jurisdictional finding; (2) De Soto improperly waived Kemper's statutory guardian ad litem right; (3) Kisiel failed to present affirmative evidence or cross-examine the social worker at the six-month review hearing; (4) Gulemi improperly refused to approve a writ petition challenging the termination of reunification services; and (5) Gulemi improperly failed to declare a conflict in 2009 and reassign the

13

case to an independent attorney. Williams also opined these errors caused Kemper's damages, including the termination of her parental rights.

### D. *Defendants' Reply Papers*

In reply, defendants argued that Kemper's submitted declarations, deposition transcripts, and memoranda were irrelevant to the collateral estoppel issue because the *N.F.* court had already rejected the argument that the claimed attorney negligence caused Kemper's claimed losses (the termination of her parental rights), and therefore she was barred from presenting new evidence and relitigating the issue. Defendants also submitted additional portions of Kemper's deposition in which she testified contrary to her later declaration.

Defendants also raised 62 separate objections to Kemper's evidence. Regarding Williams's declaration, defendants asserted that Williams's opinions lacked foundation, were speculative, and constituted improper expert testimony. Regarding Kemper's declaration, defendants argued her statements lacked foundation, were irrelevant, and improperly contradicted prior deposition testimony.

Kemper filed 28 separate objections to defendants' evidence (which consisted primarily of court documents).

### E. *Trial Court's Ruling*

After considering the parties' submissions and conducting a hearing, the court granted defendants' summary judgment motion, concluding Kemper's malpractice claim was barred by the collateral estoppel doctrine. The court reasoned that Kemper was precluded from relitigating the determination made by the *N.F.* court that Kemper's

14

"parental rights were terminated as a result of her own actions, and not as a result of her attorneys' conduct." The court also rejected Kemper's arguments that collateral estoppel does not apply because Kemper did not previously bring an ineffective assistance claim through a habeas corpus petition, and/or that Kemper's "new legal theories" preclude the collateral estoppel bar. The court summarily sustained each of defendants' evidentiary objections, and overruled Kemper's evidentiary objections.

DISCUSSION

## I. *Summary Judgment Review Standards*

A summary judgment motion must be granted if the submitted papers show there is no triable issue on any material fact and the moving party is entitled to a judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

The issues on a summary judgment motion are framed by the pleadings. (*Hilton K. v. Greenbaum* (2006) 144 Cal.App.4th 1406, 1412.) A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041.) If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue. (*Ibid.*)

"Because a summary judgment denies the adversary party a trial, [the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th

15

1293, 1305.)  We consider all of the evidence and inferences reasonably drawn from the evidence, and view the evidence in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843.)  We review a summary judgment de novo and are not bound by the trial court's stated reasons.  (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.)

## II.  *Analysis*

### A.  *Traditional Collateral Estoppel Doctrine Bars This Action*

Collateral estoppel (more accurately referred to as "issue preclusion") "prevents relitigation of previously decided issues," even if the second suit raises different causes of action.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)  Under California law, "issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)  The issue preclusion bar "can be raised by one who was not a party or privy in the first suit."  (*Id.* at p. 824.)

These elements were satisfied in this case.

First, there was a final judgment on the merits in the matter terminating Kemper's parental rights.  The determination of an issue by final judgment in a juvenile dependency proceeding is conclusive upon the parties or their privies in a subsequent suit.  (*In re Joshua J.* (1995) 39 Cal.App.4th 984, 993.)

Second, Kemper was a party in the dependency proceeding at the time of the *N.F.* appeal.  Although the focus of a juvenile dependency proceeding is on the child, a parent

16

has the status of a party in the proceeding. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) "[T]he court exercises *personal* jurisdiction over the parents once proper notice has been given" and has the authority to enter binding orders adjudicating the parents' rights to, and relationship with, the child. (*Ibid.*) A parent's status as a party permits the parent to assert and protect her own constitutional interest in the companionship, care, custody, and management of her child. (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 412.)

Third, the identical issue was actually litigated and decided in the *N.F.* case. "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] . . . [Citations.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-512.) To apply the collateral estoppel bar, the *issue* must have been raised and decided in the prior proceeding. (*DKN Holdings, supra*, 61 Cal.4th at p. 824.) But collateral estoppel applies "even if some factual matters or legal theories that could have been presented *with respect to that issue* were not presented." (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042, italics added; see *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 401-402; *Clark v. Lesher* (1956) 46 Cal.2d 874, 880-881.)

Kemper focuses her challenge on the identical-issue element. We find this challenge to be without merit. The causation issue raised (and decided) in *N.F.* was

17

whether the alleged deficiencies in counsel's performance *caused* the challenged result (the termination of parental rights). (*N.F., supra*, D055922.) This is the same issue that Kemper seeks to litigate here: whether the same alleged deficiencies in counsel's performance caused the alleged loss (the termination of parental rights).

To succeed on an ineffective assistance claim, a parent must show counsel's representation fell below an objective standard of reasonableness and the deficiency resulted in demonstrable prejudice. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180; *In re O.S.* (2002) 102 Cal.App.4th 1402, 1407.) To prove prejudice, the parent must show a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 261 (*Jackson W.*).)

These same elements are required for a legal malpractice claim. To prevail on a professional negligence claim against an attorney, the former client must prove (1) the breach of the applicable duty of care; and (2) proximate causation between the conduct and the resulting injury. (See *Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095; *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 408-409.) The proximate causation element must be proved under the " 'but for' test, meaning that the harm or loss would not have occurred without the attorney's malpractice . . . ." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1235, 1241.) In challenging claimed deficient performance in a prior litigation, the plaintiff must show causation under the case-within-a-case methodology. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 832-833.) The plaintiff must put on "a trial within a trial to establish that, but for the lawyer's negligence, the client would

18

have prevailed in the underlying action." (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 334; see *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 970.)

In the *N.F.* appeal, Kemper argued her attorneys provided her with ineffective assistance because they: (1) failed to challenge the jurisdictional finding under section 300, subdivision (g); (2) waived appointment of a guardian ad litem on her behalf; and (3) failed to raise these issues in a writ petition challenging the court's denial of reunification services and setting of the section 366.26 hearing (see rule 8.452.) (*N.F., supra*, D055922.) We specifically found that even assuming she could prove her counsel acted below the prevailing standards on these matters, Kemper did not meet her burden to show prejudice (causation): "More importantly, we cannot say the outcome—termination of parental rights—would have been different had counsel provided what [Kemper] believes was effective representation." (*Ibid.*) We reasoned that Kemper's own conduct established that she was unwilling and unable to adequately care for her child and thus she (and not her counsel) was responsible for the court's termination judgment. (*Ibid.*)

This conclusion bars relitigation of the causation issue. (See *Weiner v. Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 48.) In her malpractice complaint, Kemper asserts the same negligence grounds that she asserted in her ineffective assistance claim. The complaint identifies two additional acts of negligence: (1) allowing a case plan to be put in place that "was doomed to fail"; and (2) *after* Kemper's parental rights were terminated, counsel "fail[ed] and refus[ed] to file and/or pursue a writ of habeas corpus" that would have ameliorated the damages. With respect to the first claim, this is functionally the same as the failure to challenge the termination of

19

reunification services through a rule 8.452 writ petition; both concern the adequacy of reunification services and compliance with those services. With respect to the failure to bring a habeas corpus petition *after* the termination of parental rights, Kemper did not allege that any of the defendant attorneys represented Kemper during posttermination proceedings and therefore they cannot be held responsible for actions taken after the termination judgment.

In any event, the fact a party asserts new legal or factual theories or new evidence relevant to an issue previously decided does not affect the applicability of the collateral estoppel bar. (See *Roos v. Red* (2005) 130 Cal.App.4th 870, 888; *Frommhagen v. Bd. of Supervisors* (1987) 197 Cal.App.3d 1292, 1301 [collateral estoppel applies " 'even though some *factual* matters or *legal* arguments which could have been presented in the prior case . . . were not presented' "]; *Carroll v. Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 ["[O]nce an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted might have produced a different outcome."].)

Kemper contends these principles do not apply here because she was "restricted" in the type of evidence she could present to support her ineffective-assistance claim. She notes that in considering an appeal, a court is limited to considering the evidence that was presented in the court below. (See *In re Carpenter* (1995) 9 Cal.4th 634, 646 ["[a]ppellate jurisdiction is limited to the four corners" of the appellate record].) She thus argues that she never had a "full and fair opportunity" to litigate the causation issue in the *N.F.* appeal.

20

This argument is factually unsupported. The undisputed evidence shows Kemper *did* have a full and fair opportunity to litigate the causation (prejudice) issue. Kemper was represented by independent counsel in the *N.F.* appeal, who argued that the prior counsel's representation *caused* the termination judgment. If counsel had believed additional relevant evidence was available and necessary to prove the claim, counsel could have brought a habeas corpus petition. The courts have recognized that a habeas petition is the correct vehicle to raise an ineffective assistance of counsel claim in juvenile dependency cases where the record is unclear whether counsel had reasonable grounds for the challenged actions or nonactions. (See *In re Darlice C.* (2003) 105 Cal.App.4th 459, 463 (*Darlice C.*); *In re Carrie M.* (2001) 90 Cal.App.4th 530, 533-536 (*Carrie M.*); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1658-1672 (*Kristin H.*); see also *In re Paul W.* (2007) 151 Cal.App.4th 37, 53-55; *In re Paul W., supra*, at pp. 65-72 (conc. opn. of Bamattre-Manoukian, J.).) Kemper does not contend that her appellate counsel acted below the standard of care in making the decision not to bring a habeas petition, or that defendants De Soto, Kisiel, or Gulemi were in any way responsible for this decision.

Moreover, on our review of the entire record, Kemper has not presented any *new facts* on the *causation element* that were not, or could not have been, presented in the *N.F.* appeal. A section 388 modification petition serves as an escape mechanism for parents who seek to present new information to the court that may not have been available or adequately presented in a prior juvenile dependency hearing. (See *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*); *Jackson W., supra*, 184 Cal.App.4th

21

at p. 258.)  Kemper's counsel MacGillis (whose competency is not challenged) took full advantage of this procedure, including calling Kemper and social worker Hood to testify to their understanding of the relevant events regarding the factual support (or nonsupport) for the prior jurisdictional findings; the court's failure to appoint a guardian ad litem; the adequacy of reunification services; and Kemper's compliance with her reunification plan. All of the information presented in Kemper's current declaration was available to her at the time of the section 388 hearing, and we necessarily presume counsel (who is not alleged to have been negligent) presented this information to the court.

After considering the evidence (including the evidence presented at the combined section 388/366.26 hearing), the *N.F.* court concluded that even assuming Kemper's prior counsel acted below the standard of care, these deficiencies did not *cause* the termination of her parental rights.  (*N.F., supra*, D055922.)  We explained the evidence overwhelmingly showed that 16-year-old Kemper was not available to parent her young child for the first year of the child's life.  (*Ibid.*)  Kemper's current evidence presented in opposition to the summary judgment does not create a factual dispute on this foundational fact.  To the extent Kemper now presents evidence that her proffered expert (a juvenile dependency appellate attorney) and her prior counsel (MacGillis) disagree with our prior legal and factual conclusions, these attorney opinions are not facts that can be used to collaterally attack this court's determinations.

22

B. *Kemper's Proposed Exception to the Collateral Estoppel Bar is Without Merit*

Kemper alternatively contends this court should create an exception to the collateral estoppel doctrine based on an analogy to the habeas corpus procedure in juvenile dependency cases.

In support, Kemper first discusses that review of an ineffective assistance of counsel claim on appeal is restricted to the appellate record (essentially the evidence presented in the dependency proceedings), whereas the standards applicable to a habeas corpus petition in a juvenile proceeding allow the parent to submit extra-record evidence relevant to the issues. (See *Darlice C., supra*, 105 Cal.App.4th at p. 463; *In re Merrick V.* (2004) 122 Cal.App.4th 235, 255.) Kemper next notes that collateral estoppel principles generally do not bar a habeas corpus petition in a criminal action after the litigation of the issue on appeal because additional evidence is permitted in a habeas proceeding. (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.) Kemper then posits that under this "same legal reasoning," an unsuccessful claim of ineffective assistance of counsel decided on direct appeal in a juvenile dependency proceeding should not bar a later civil malpractice claim. Put otherwise, Kemper maintains that if a party is permitted to relitigate an issue by producing additional evidence supporting a habeas corpus petition filed in a juvenile dependency action, the same party should be permitted to relitigate the issue by instead producing the additional evidence in a malpractice action.

We reject this argument. The chain of reasoning is flawed because it is inconsistent with the specific habeas corpus rules applicable to a juvenile dependency

23

proceeding. Additionally, the proposed rule is incompatible with fundamental public policies regarding finality of judgments, particularly those involving dependent children.

First, Kemper's assertion that a malpractice action is analogous to a habeas corpus petition for purposes of collateral estoppel ignores the different factual contexts and policy objectives of the two types of actions. Permitting a parent to challenge the effectiveness of his or her counsel in a habeas petition seeks to protect a parent's fundamental rights by allowing a full examination of the relevant facts *before* termination of rights is final. The termination of parental rights implicates a fundamental liberty interest (*Marilyn H., supra*, 5 Cal.4th at p. 306), and therefore "significant due process safeguards have been built into the dependency scheme (*id.* at p. 307), including a right to court-appointed counsel for a parent who cannot afford to retain counsel . . . ." (*In re James F.* (2008) 42 Cal.4th 901, 904.) "All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." (§ 317.5, subd. (a); see rule 5.660(d); *In re M.P.* (2013) 217 Cal.App.4th 441, 454.) This right to counsel "include[s] the [parent's] right to seek review of claims of incompetence of counsel" (*Kristin H., supra*, 46 Cal.App.4th at p. 1662), which necessarily encompasses the parent's right to challenge counsel's competency in a habeas petition by bringing in new evidence (*id.* at pp. 1658-1667).

But to ensure the child's welfare is protected, the parent must file the habeas corpus petition within the time deadlines for filing an appeal to the particular juvenile court order or judgment. (*Carrie M., supra*, 90 Cal.App.4th at pp. 533-534; see *Kristin H., supra*, 46 Cal.App.4th at p. 1667.) This timeline protects the significant need for

24

finality in the dependency system. The timeliness rule also reflects that the habeas procedure in juvenile dependency actions exists not only to safeguard the parent's fundamental rights but also to ensure the correctness of the *result*—that the judgment/order promotes the child's welfare. " 'If counsel's ineffective representation of the parent has resulted in an inappropriate termination of the parent-child relationship, the child may have an interest equal to that of the parent's in its restoration.' " (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1664; see *In re Emilye A*. (1992) 9 Cal.App.4th 1695, 1707, fn. 9.) Without a fair hearing (with adequate representation), there may exist questions regarding whether the child's best interests were served. (*Ibid.*) "[R]eversal of an order in a dependency proceeding [because of incompetency of counsel] . . . does not preclude further dependency proceedings in juvenile court . . . ." (*In re Emilye A., supra*, 9 Cal.App.4th at p. 1707, fn. 9.) But it does "require[ ] that the proceedings be *reconducted* . . . ." (*Ibid.*; accord, *In re Paul W., supra*, 151 Cal.App.4th at p. 71 (conc. opn. of Bamattre-Manoukian, J.).)

A legal malpractice claim is different. Allowing a parent to relitigate the competency-of-counsel issue in a civil action does not impact the result of the prior case—parental rights would remain terminated and no new hearings would be conducted. A malpractice action effectuates the purposes of tort law—to fully compensate a party for his or her losses—but has no relationship to the core purpose of the juvenile dependency system: to ensure a child's welfare is protected. The reasons for allowing additional evidence to be presented through a habeas petition do not exist in a civil malpractice action.

Kemper argues that fairness requires courts to provide a choice to parents who unsuccessfully assert an incompetence of counsel claim on appeal: the parent can either file a habeas corpus petition *or* a civil malpractice claim. The argument is unsound.

A primary purpose of the collateral estoppel doctrine is to prevent inconsistent judicial rulings. (See *People v. Lawley* (2002) 27 Cal.4th 102, 163.) There is no possibility of inconsistent rulings with a habeas corpus petition asserting an incompetence-of-counsel claim because the petition must be timely brought as part of the juvenile dependency proceeding. (*Carrie M., supra*, 90 Cal.App.4th at pp. 533-534.) That is not the case with a malpractice action. Allowing a malpractice plaintiff to collaterally challenge factual findings reached in a prior parental termination action could result in inconsistent judicial conclusions "contraven[ing] ' "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' " (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1204 (*Coscia*).) This inconsistency is particularly troubling in the juvenile dependency context, where the outcome could result in a termination of parental rights that could be later adjudged by a jury to be the result of incompetence of counsel. Allowing for this potential conflict interferes with the need for stability in family relationships, finality in judicial decisions, and respect for our judicial system.

Additionally, any rule that would encourage parents to avoid a habeas corpus petition in favor of obtaining damages for their claimed losses does not serve the interests of the affected children. A child's best interests are promoted if a parent has competent counsel. (See *Kristin H., supra*, 46 Cal.App.4th at p. 1664; *In re Emilye A., supra*, 9

26

Cal.App.4th at p. 1707, fn. 9.) Thus, it is important that parents utilize the habeas corpus procedure (before parental rights are terminated) if there is a viable basis for such a claim and extra-record evidence is necessary to prove the claim. There is no benefit to a child if a parent (whose parental rights were terminated) successfully proves in a civil malpractice action that he or she was not properly represented. The parent obtains a monetary judgment, but the judgment has no effect on the child's wellbeing.

Further, the requirement that a parent is bound by an appellate ruling will prevent frivolous malpractice claims. The Legislature included numerous safeguards in the juvenile dependency scheme to prevent the erroneous termination of parental rights, including when a " 'parent [was] . . . poorly represented.' " (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208; see *Marilyn H., supra*, 5 Cal.4th at pp. 307-309.) Given the personal and emotional issues arising from a parental termination, it is not uncommon for a parent to blame his or her attorney for the outcome. Permitting a parent to bring a civil malpractice action to relitigate a factual finding made in the juvenile proceeding would waste judicial resources and likely lead to a multitude of meritless actions.

The Legislature structured the juvenile dependency system to provide trained juvenile court judges with broad discretion in making factual and legal conclusions regarding a child's best interest and in evaluating a parent's ability to care for his or her child in a safe manner. In this role, a court has the ability and opportunity to assess counsel's performance and to protect the needs of children and their parents if they are not being properly represented. Allowing a jury to second-guess this factual

27

determination in a legal malpractice action does not represent beneficial public policy consistent with the dependency statutes.

Finally, our conclusion is supported by collateral estoppel principles applicable when a criminal defendant brings a legal malpractice claim against his or her former defense attorney.

As in juvenile dependency proceedings, a criminal defendant may bring an ineffective assistance of counsel claim by appeal or by habeas corpus petition, but the preferred method is by habeas because of the rules permitting extra-record evidence to be submitted on the issue of the counsel's reasons for the challenged action. (*People v. Mendoza Tello, supra*, 15 Cal.4th at pp. 266-267.) An appellate court's rejection of a criminal defendant's incompetency challenge on appeal generally does not preclude a subsequent habeas petition. (*Id.* at p. 267.)

But unlike Kemper's proposed rule, the California Supreme Court held that to prove malpractice by a criminal defense attorney, the former criminal defendant must satisfy the elements of a civil malpractice claim *and* prove his or her actual innocence. (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536-545.) Of particular relevance here, the high court also later held that to "establish actual innocence in a criminal malpractice action," the individual convicted of the criminal offense must first "obtain reversal of his or her conviction, or other exoneration by postconviction relief[.]" (*Coscia, supra*, 25 Cal.4th at pp. 1199-1201.) The Supreme Court explained: "[T]he requirement of exoneration by postconviction relief protects against inconsistent verdicts—such as a legal malpractice judgment in favor of a plaintiff whose criminal

28

conviction remains intact—that would contravene ' "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." [Citation.]' [Citation.] This requirement also promotes judicial economy. Many issues litigated in the effort to obtain postconviction relief, including ineffective assistance of counsel, would be duplicated in a legal malpractice action; if the defendant is denied postconviction relief on the basis of ineffective assistance of counsel, collateral estoppel principles may operate to eliminate frivolous malpractice claims." (*Id.* at p. 1204.) Accordingly, "an intact conviction precludes recovery in a legal malpractice action." (*Ibid.*)

The same reasons apply here to preclude a later malpractice action unless and until a prior finding of no causation is successfully challenged in the prior dependency action.

## C. *Kemper's Additional Arguments*

Kemper alternatively contends defendants are judicially estopped from asserting the collateral estoppel bar based on statements made in the appellate oral argument in the *N.F.* appeal. During the oral argument, the County's counsel asserted that this court could not presume incompetence of counsel "absent a record which maybe could have been brought via habeas corpus, which would give us declarations as to why counsel did what counsel did." Additionally, Kemper directs us to a remark by one of the appellate justices to Kemper's appellate counsel, stating "Looks like you're planning on filing a habeas."

These statements do not preclude defendants from asserting collateral estoppel in the civil malpractice action. First, other than the County, none of the defendants were

29

parties to the prior action and therefore the County counsel's statements cannot bind them. Second, as discussed above, the potential availability of a habeas corpus remedy to bring an ineffective assistance claim does not support an argument that a party has the right to avoid the collateral estoppel bar in a later civil malpractice action.

Kemper also challenges the trial court's blanket evidentiary rulings. Although we agree that blanket rulings are generally not helpful to the parties or to the reviewing court (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447), we need not discuss the evidentiary rulings in detail because they were not prejudicial to Kemper. As discussed above, even assuming we consider the evidence proffered by Kemper, the summary judgment was proper. Additionally, because the County's evidence was mainly documents from the prior *N.F.* action, the court properly overruled Kemper's objections.[5]

---

[5] Both parties discuss this court's prior unpublished appellate opinion involving Kemper's separate federal civil rights action against social workers and police officers involved with the dependency proceeding. (*Kemper v. County of San Diego* (Apr. 22, 2013, D059637).) Because this prior opinion resolved different issues and causes of action, the opinion is not relevant under doctrines of law of the case, collateral estoppel, or res judicata. As such, it may not be cited or relied upon by the parties. (Rule 8.1115.) In any event, our decision here is consistent with the prior *Kemper* opinion.

DISPOSITION

Judgment affirmed.  The parties to bear their own costs on appeal.


HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.

31