Filed 8/1/24  In re B.F. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re B.F., a Person Coming Under the Juvenile Court Law. | B332389 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>T.J.,<br><br>    Defendant and Appellant. | Los Angeles County Super. Ct. No. 23CCJP00468A |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge. Affirmed.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Appellant T.J., who is the maternal uncle of the dependent minor, B.F., appeals the juvenile court's summary denial of his petition for a change of court order under Welfare and Institutions Code[1] section 388. T.J. contends that the court abused its discretion in failing to issue an order allowing him to live with B.F. and her caretaker and to transport the minor. He further contends that he should be granted a criminal records exemption and that the Los Angeles County Department of Children and Family Services (the Department) was estopped from denying him an exemption because a social worker purportedly promised him that he would receive Resource Family Approval (RFA) and be permitted to reside with the minor if he signed an affidavit. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On August 30, 2023, T.J. filed a request to change a court order concerning his niece, B.F., under section 388. He identified the order as the social worker's statement that "if the maternal uncle is around the child, the child will be removed from her current placement and put in foster care." In his petition, T.J. claimed that he "obtained a residence based on the RFA . . . social worker advising him that he was approved; the child and her caregiver [have] resided with the maternal uncle; and the child has been well taken care of." He asked the court to issue an order permitting B.F. to reside with him and to allow him to transport the child. T.J. asserted that the change in order would benefit the

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

minor because "[t]he minor is deeply bonded with her uncle; she has resided with him for most of her life; he provides for her needs; and he obtained a residence to meet her needs." He indicated in his petition that the minor and her caretaker both agreed with his request.

In his memorandum of points and authorities, T.J. acknowledged that the "court and social workers have not approved [T.J.] to be in the home with the child," but contended he should be permitted to reside with her because "the child has been cared for by [T.J.] for most of her life, she is safe with him, and he obtained a residence based on the RFA social worker's statement that he had been approved."

In his declaration, T.J. stated that "[he] applied for RFA; and the social worker told [him] that [he] had been approved if [he] signed an affidavit" and that, "[i]n reliance on the social worker's statement, [he] signed the affidavit and leased a three-bedroom house." He further stated that B.F. and her caretaker resided with him but that "[he] was recently told by the social worker that due to [his] prior convictions; [he] was going to be denied RFA . . . and had to move out of [his] house or [B.F.] would be placed in foster care." T.J. represented that B.F. was "safe in [his] home and not in harm's way."

T.J.'s petition attached a March 2023 letter from the Department entitled "Notice of Need for Criminal Record Exemption/Clearance" (the Notice), in which the Department explained that, in light of T.J.'s criminal record, he must complete and submit a Resource Family Criminal Record Statement (Form RFA 01B) and submit three signed and dated reference letters. A blank Form RFA 01B and blank reference letter forms were attached to the Notice. The Notice also attached

3

the results of a Live Scan that indicated that T.J. had been convicted of a dozen felonies between 2002 and 2018, including for the crimes of being a felon in possession of a firearm, grand theft auto, and robbery.

T.J. also attached various certificates he received between 1994 and 2018 for the completion of educational and vocational courses. He did not attach the affidavit he signed for the social worker.

At a hearing held on September 11, 2023, the court asked counsel for the Department for its view on whether a hearing should be set for the section 388 petition. Counsel for the Department stated that T.J. had a criminal record that included a non-exemptible felony and that no hearing should be set on the petition. Counsel for the minor joined the Department's recommendation and observed that the petition made representations that T.J. had obtained RFA, although it was counsel's understanding, after speaking with other relatives of the minor, that this was not true. In light of T.J.'s extensive criminal record, counsel for the minor argued that "it would not be appropriate or safe for maternal uncle to reside with [his] clients." Counsel for the minor's mother and father did not have instruction from their clients. The court summarily denied the petition on the ground that it failed to make a sufficient showing of changed circumstances.

T.J. timely appealed.

## DISCUSSION[2]

T.J. argues that the court erred in denying his section 388 petition because he made a prima facie showing of changed circumstances. He contends that he detrimentally relied on a social worker's statement that he had received RFA, submitted certificates and diplomas, and represented that he has stable employment and is bonded with the minor. He further contends that he should have received a criminal records exemption because he has stable employment, a residence, a good relationship with the minor, and has been rehabilitated. Finally, he argues that he should receive RFA under the theory of promissory estoppel because he detrimentally relied on the social worker's statement that he had been approved.

Before addressing these contentions, which we conclude are without merit, we provide a brief overview of the relevant law concerning criminal records exemptions for purposes of obtaining RFA.

---

[2] The argument section of T.J.'s opening brief and his reply brief are devoid of any citation to the record. An appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) It is well established that " '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) T.J.'s citation to the record in the factual background portion of his opening brief does not cure his failure to support his arguments with citation to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.) However, as the Department does not raise this failure, we opt to address T.J.'s arguments on the merits.

### 1. RFA and Criminal Records Exemption

"The purpose of the RFA [program] is to provide 'a unified, family friendly, and child-centered resource family approval process to replace the existing multiple processes for licensing foster family homes, certifying foster homes by licensed foster family agencies, approving relatives and nonrelative extended family members as foster care providers, and approving guardians and adoptive families.' " (*In re Charlotte C.* (2019) 33 Cal.App.5th 404, 416, quoting § 16519.5, subd. (a).) "An approved resource family has successfully met both the home environment assessment standards and the permanency assessment criteria necessary for providing care for a child." (*Charlotte C.*, at p. 416, citing § 16519.5, subd. (c)(1).) The home environment assessment criteria include "[a] criminal record clearance of each applicant and all adults residing in, or regularly present in, the home." (§ 16519.5, subd. (d)(2)(A)(i)(I).) "If the criminal records check indicates that the person has been convicted of an offense described in subparagraph (A) of paragraph (2) of subdivision (g) of Section 1522 of the Health and Safety Code, home approval shall be denied unless the person has received a criminal records exemption pursuant to clause (iv) of subparagraph (A) of paragraph (2) of subdivision (g) of Section 1522 of the Health and Safety Code." (§ 16519.5, subd. (d)(2)(A)(i)(III).)

Among the convictions described in Health and Safety Code section 1522, subdivision (g)(2)(A)(i), are convictions within the past 10 years for "crime[s] against an individual specified in subdivision (c) of Section 667.5 of the Penal Code." According to his Live Scan report, in 2018, T.J. was convicted of robbery, which is one of the crimes listed in the Penal Code provision. (Pen. Code, § 667.5, subd. (c)(9) [" 'violent felony' " includes "[a]ny

6

robbery"].) Health and Safety Code section 1522, subdivision (g)(2)(A)(iv), provides that "the department or other approving entity may grant an exemption for a relative or any other adult living in the home, who has been convicted of an offense described in this subparagraph if the applicant is seeking placement of a specific child or children with whom the applicant is related, the applicant or other adult living in the home is of present good character necessary to justify granting the exemption pursuant to the factors described in subparagraph (C)." These factors include "[t]he nature of the crime or crimes," "[t]he period of time since the crime was committed," and "[a]ny longstanding pattern of criminal conduct," among others. (Health & Saf. Code, § 1522, subd. (g)(2)(C)(i)–(iii).)

2. **The juvenile court did not abuse its discretion in concluding that T.J. failed to demonstrate changed circumstances.**

Under section 388, a parent or other person having an interest in the child may petition to change or set aside a prior juvenile court order "upon grounds of change of circumstance or new evidence," and the juvenile court shall order a hearing where "it appears that the best interests of the child . . . may be promoted" by the new order. (§ 388, subds. (a)(1) & (d); see also Cal. Rules of Court, rule 5.570(a).) The petitioner "need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the [petitioner's] request. [Citation.] [¶] However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not

7

order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.]" (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) We review a juvenile court's decision to deny a section 388 petition without a hearing for abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.)

The Department points out that T.J.'s section 388 motion did not seek to modify a prior order of the juvenile court. Rather, the order concerned a social worker's statement that "if the maternal uncle is around the child, the child will be removed from her current placement and put in foster care." For purposes of argument, we will assume that T.J. could properly request an order to reside with and transport B.F. through a section 388 petition even though he failed to identify a relevant court order. We conclude that the juvenile court did not abuse its discretion in finding that there was insufficient evidence of changed circumstances to sustain a favorable decision on the petition. T.J. has an extensive criminal record, including a conviction for robbery that occurred in the 10 years preceding the petition. In light of this history, the Notice informed T.J. that he had to submit a form affidavit and three reference letters within 15 days to obtain a criminal records exemption that would allow him to receive RFA. Neither a completed form affidavit nor signed reference letters appear in the record. Although T.J. makes the ambiguous claim in his declaration that a social worker told him he had received or would receive RFA based on signing an affidavit (the contents of which he does not disclose), the law is clear that, absent a criminal records exemption, T.J. could not receive RFA. (§ 16519.5, subd. (d)(2)(A)(i)(III), italics added

["home approval *shall be denied* unless the person has received a criminal records exemption"].) There is no evidence that the Department granted a criminal records exemption, and T.J.'s memorandum of points and authorities in support of his petition concedes that he had not received approval from the Department to reside with the minor. Thus, there is no basis in the record to conclude that there was a change of circumstances that would permit the court to issue an order allowing T.J. to reside with or transport the minor.

T.J. contends that he demonstrated a change of circumstances because he "had stable employment, his own residence, he, and the minor were bonded, the minor had resided with him throughout her life, his driver's license had been valid without any infractions for over fifteen years," "he provided certificates for anger management and several vocational schools," "successfully completed probation, had been clean and sober for over seven years, he graduated from high school, he obtained a medical assistant certificate, and he received a diploma for painting and construction." He cites no authority for the proposition that certificates and diplomas or a strong bond with the minor are an adequate substitution for obtaining a criminal records exemption.[3] The law is plainly to the contrary.

Even if T.J. had adequately demonstrated a change in circumstances, which he did not do, T.J. also failed to make a prima facie showing that it was in the minor's best interest to live

---

[3] T.J. argues in his reply brief that "the Department does not seem to deny that the Appellant showed a change of circumstances." We observe no such concession in the Department's brief, which argues that the court correctly found no change of circumstances where there was no evidence that T.J. had received RFA.

9

with him. Contrary to T.J.'s representation in the petition that the minor agreed to his requested order, her attorney opposed the petition on the grounds that it would not be appropriate or safe for the minor to reside with T.J.[4]

**3.    Whether T.J. should have received a criminal records exemption was not before the juvenile court and is not properly before this court.**

T.J. contends that his "nearly twenty-year-old convictions should not prevent [him] from residing in the same home as the minor" and that a criminal records exemption should be granted to permit RFA.

As a preliminary matter, although some of T.J.'s felony convictions are nearly 20 years old, others, including his 2018 robbery conviction, are not nearly as remote in time as he would have this court believe.

Moreover, "[t]he decision to grant a criminal records exemption is an executive function that lies exclusively with the [county social services agency]. [Citations.] By enacting section

---

[4] The record also casts doubt on T.J.'s claim that he resided with B.F. for "most of her life." B.F. was born in July 2009. Although it is unclear from the record how long T.J. was actually in jail or prison in connection with his felony convictions during the minor's lifetime, his Live Scan report states that, in 2010, he was convicted of receiving stolen property and of being a felon in possession of a firearm and was sentenced to three years for each crime; in 2017, he was convicted of using another person's personal identifying information for an unlawful purpose and of grand theft auto and was sentenced to two years and to eight months for the respective crimes; and in 2018, he was convicted of committing robbery of an inhabited dwelling and was sentenced to six years. The record therefore indicates that T.J. may have been incarcerated for significant portions of the minor's life.

10

361.4, the Legislature has given the [a]gency 'the express authority to veto' a placement with a relative who has suffered criminal convictions. [Citation.] [¶] Having given the authority to grant an exemption to the [a]gency, 'it is apparent that the Legislature did not intend to confer such authority on the juvenile court.' [Citations.] Accordingly, the juvenile court may not place a child with a relative who has an unexempted criminal history, even when the court determines that placement would be in the child's best interests . . . ." (*In re M.L.* (2012) 205 Cal.App.4th 210, 225–226.) "If the court determines that the [county social services agency] did abuse its discretion, it may direct it to reconsider the request using the appropriate legal standard, but cannot directly override the request and grant the exemption." (*Id.* at p. 227.) "A review for abuse of discretion must be highly deferential to the decision maker . . . and requires a showing that the decision was 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Id.* at p. 228.)

T.J.'s contention that an exemption should have been granted is without merit. "As a general rule, a party is precluded from urging on appeal any point not raised in the trial court." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411–412.) T.J. did not argue below that the Department abused its discretion in declining to grant him a criminal records exemption. Indeed, he made no reference whatsoever to his criminal record in his petition or memorandum of points and authorities. Rather, T.J. argued that the minor should be permitted to live with him because "the child has been cared for by [T.J.] for most of her life, she is safe with him, and he obtained a residence based on the RFA social worker's statement that he had been approved." In other words, T.J. argued that it would be in the child's best

11

interests. Even if the juvenile court had agreed, it lacked the authority to allow B.F. to reside with T.J. in light of his unexempted criminal record. (*In re M.L.*, *supra*, 205 Cal.App.4th at p. 226; see also § 16519.5, subd. (d)(2)(A)(i)(III).)

Moreover, as discussed, the record does not establish that T.J. completed the affidavit form or submitted the references required by the Department in the Notice. T.J. also failed to identify the contents of the affidavit he purportedly signed. Accordingly, there is no evidence that T.J. sought a criminal records exemption in the manner the Department instructed or that his affidavit addressed any of the criteria the Department must consider in deciding whether to grant an exemption. We therefore agree with the Department that the record fails to support that the question of whether to grant a criminal exemption was ever properly before the Department. Absent an exercise of discretion by the Department, there is nothing for us to review.

4.      **T.J. fails to establish that he should be permitted to reside with the minor under principles of promissory estoppel.**

" 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." [Citation.]' [Citation.]" (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945.) T.J. contends that, in reliance on a statement by the social worker that he would receive or had received RFA, he obtained a larger, more expensive residence. He therefore argues that "the RFA application should be approved, as the social worker stated."

T.J.'s memorandum of points and authorities in support of his section 388 petition did not argue that promissory estoppel compelled the Department to grant RFA. Thus, we may consider this point forfeited. (*In re Riva M.*, *supra*, 235 Cal.App.3d at pp. 411–412.) T.J. also fails to cite authority supporting his contention that promissory estoppel can compel the Department or juvenile court to permit an individual with a recent violent felony conviction to reside with a dependent minor absent evidence that the individual complied with the Department's requirements for obtaining a criminal records exemption. Indeed, T.J. does not cite *any* case in which promissory estoppel was applied in the context of juvenile dependency proceedings. Considering that the core purpose of the juvenile dependency system is to ensure that a child's welfare is protected (*Kemper v. County of San Diego* (2015) 242 Cal.App.4th 1075, 1094; see also § 202, subd. (a)), we are not persuaded that promissory estoppel principles would permit a court to issue an order that could place a child at risk, even if a relative detrimentally relied on a representation made by a social worker.

Even if we were inclined to overlook either or both of these issues, and we are not, T.J. fails to establish that a clear and unambiguous promise was made. Without citation to the record, T.J. contends that "[h]ere, the social worker informed (promised) the Appellant that he had been RFA approved and could reside with his niece." However, T.J.'s declaration stated that a RFA social worker told him he "had been approved *if* [*he*] *signed an affidavit*." (Italics added). It is unclear what this means. Notwithstanding the use of the past tense, the conditional portion of this sentence indicates that the social worker told T.J. that he would receive RFA if he signed an affidavit. T.J. does not identify

13

the RFA social worker with whom he spoke, what the social worker told him the affidavit should address, or whether the contents of the affidavit he signed were consistent with any instructions he received from the social worker. Thus, his declaration does not establish the existence of a promise of "sufficient definitiveness and clarity[] to justify applying promissory estoppel." (*Lange v. TIG Ins. Co.* (1998) 68 Cal.App.4th 1179, 1186.)

## DISPOSITION

The juvenile court's order denying T.J.'s section 388 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.