Filed 4/8/26  San Diego Police Officers' Assn. v. City of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO POLICE OFFICERS' ASSOCIATION,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF SAN DIEGO,<br><br>        Defendant and Appellant. | D084773<br><br><br>(Super. Ct. No.<br>37-2022-00031121-CU-WM-CTL) |

APPEALS from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Law Office of Michael A. Conger and Michael A. Conger for Plaintiff and Appellant.

Heather Ferbert, City Attorney, M. Travis Phelps, Assistant City Attorney and Jana Mickova Will, Deputy City Attorney for Defendant and Appellant.

The San Diego Police Officers' Association (Association) sought a writ of mandate (Civ. Code, § 1085) and declaratory relief against the City of San Diego (City) in part seeking a judicial declaration that an element of compensation for police lieutenants and captains—police management incentive pay (incentive pay)—is pensionable, that is, included in "Base Compensation" as defined in section 24.0103 of the San Diego Municipal Code (SDMC 24.0103) for purposes of their pension calculations. Following a bench trial, the trial court ruled City properly determined the incentive pay was not pensionable.

Association appeals, contending the court erred by failing to follow this court's prior unpublished opinion in *Sloan v. City of San Diego,* D049158 (Jan. 29, 2008) (*Sloan*), which it says bars City from relitigating the issue. Association maintains the incentive pay is pensionable under certain City documents that memorialize excluded and included items of pensionable compensation (the "Earnings Codes Document") because it is paid to captains and lieutenants for ordinary work hours at the same rate of pay. Association argues any ambiguity on the issue should have been resolved in favor of the employees claiming the right to the pension. Association further contends the court should have issued a writ of mandate requiring City to void its modification of what Association characterizes as "rules" for determining Base Compensation and to take steps to correctly report officers' Base Compensation to City's retirement system. Finally Association argues the trial court erred by failing to resolve its declaratory relief cause of action. City has also appealed from the judgment, arguing Association's claims, particularly its argument that City had improperly changed the Earnings Codes Document "rules," are either barred by the statute of limitations or by issue and claim preclusion. We affirm the judgment.

2

FACTUAL AND PROCEDURAL BACKGROUND

*The July 2021 MOU and Bargaining*

Association is the recognized collective bargaining group for City police officers.  In July 2021, City and Association entered into a memorandum of understanding (the July 2021 MOU) providing that managerial employees, captains and lieutenants, "will receive an annual $3,000 cash incentive pay."[1]  During their bargaining negotiations, City and Association representatives did not discuss whether the incentive pay would be included in Base Compensation for purposes of determining retirement benefits.  Association did not meet and confer over the issue.  After the parties signed the MOU, City notified Association that though it had initially determined the incentive pay was pensionable, on further consideration it decided it was not.

*Association's Action for Writ of Mandate and Declaratory Relief*

In 2022, Association filed an action seeking a writ of mandate requiring City to include the incentive pay in Base Compensation, which it acknowledged was defined in SDMC 24.0103.  Association alleged that since July 2021, every City's Earnings Codes Document had incorrectly excluded incentive pay from Base Compensation and final compensation, which affected employees' retirement allowances.  It sought a judicial declaration that (1) SDMC 24.0103, (2) City rules for determining which pay items are to be included in Base Compensation, or (3) constitutional protections afforded pension rights, or all three, required City to include the incentive pay in Base Compensation.

---

[1]     In full, Article 75 of the MOU provides:  "Effective July 1, 2021, or the first full pay period following City Council approval of this MOU, whichever is later, in recognition of on-call and other operational responsibilities for Police Management positions (i.e., Police Lieutenant and higher), these employees will receive an annual $3,000 cash incentive pay."

In 2023, Association amended its complaint to add a claim alleging that by unilaterally amending the Earnings Codes Document, City violated the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.). Association asked the court to issue a peremptory writ of mandate voiding the unilateral modification, and requiring City to correctly report officers' Base Compensation to the retirement system.

Before trial, the court granted summary adjudication in City's favor on Association's Meyers-Milias-Brown Act claim, ruling Association had failed to exhaust its administrative remedies with the Public Employment Relations Board (PERB).

*Association's Trial Brief and Evidence*

The matter proceeded to a three-day bench trial. Association's theory was that whether incentive pay was pensionable was governed by SDMC 24.0103 and its definition of Base Compensation, which was interpreted by this court in *Sloan, supra,* D049158 to incorporate the City's Earnings Codes Document and pensionability "rules." According to Association, the Earnings Codes Document rules provided that a particular component of compensation is " 'included in retirement base earnings because all employees performing that class of work during their ordinary work hours on a consistent basis earn them at the same rate of pay.' " Thus, Association took the position that "[b]ecause management incentive pay is paid to all . . . captains and lieutenants for work during their ordinary work hours, management incentive pay is pensionable." Association argued *Sloan* barred City from relitigating the issue under res judicata and collateral estoppel, even though after 2005, City had stopped publishing the so-called rules in its annual Earnings Codes Document.

4

Association presented evidence from its board members Jack Shaeffer and Jared Wilson, as well as attorney Bradley Fields, who helped negotiate the incentive pay which came into being in the July 2021 MOU. Shaeffer testified he signed the 2021 MOU. He confirmed that parts of it addressed whether various allowances were pensionable, and that Association and City had entered into side agreements on issues including uniforms and hiring of provisional employees. He testified that City never sent any notification about changing its Earnings Codes Document, and there were no side letters on the matter. Wilson, the then-current Association president, testified that Association negotiated incentive pay in fiscal year 2022, which began July 1, 2021, and ended June 30, 2022. He confirmed that all police captains and lieutenants, who were exempt from getting overtime pay, received incentive pay, which had nothing to do with hours worked, but was part of their normal pay.

Fields testified that the pensionability of the incentive pay never came up in negotiations, and he did not agree with City's position that it was not pensionable. He stated he did not respond to City's e-mail about it because after City finalized its position, he had no ability to do anything but accept or litigate the issue. Fields also confirmed that he saw nothing indicating City had ever notified Association it had changed or deleted items in the Earnings Codes Document. On cross-examination, Fields testified that if City wanted to change some pensionable item of pay to make it not pensionable, it would need to bargain with Association. He opined that the pay should be pensionable under the Earnings Codes Document in place before 2005 because all individuals within the classification got it.

Association also presented Abegaile Serafico, who was part of City's negotiating team for the July 2021 MOU and who notified Association that

5

City had determined the incentive pay was not pensionable. She did not personally make the decision whether incentive pay was pensionable; it was made in consultation with attorneys.

*City's Trial Brief and Evidence*

City's position was that incentive pay was not pensionable as a matter of law. It argued incentive pay did not fall within the definition of Base Compensation under SDMC 24.0103 because it was not paid bi-weekly, but in one annual sum. It argued Association did not dispute that "since inception, [incentive pay] has formally been classified by the City as non-pensionable under [SDMC] 24.0103 and always listed as non-pensionable on all Earnings Codes Documents." City asked the court to take judicial notice of, among other things, City's Municipal Code sections 24.0100 to 24.0107, effective in July 2022.

At trial, City presented testimony from its lead negotiator Timothy Davis, who bargained the July 2021 MOU. Davis confirmed that the pensionability of incentive pay was not negotiated or discussed with Association before they signed the July 2021 MOU. He explained why: "The rules related to what is pensionable or not are in the Municipal Code. And . . . City made no proposal to change those rules, nor did [Association] make any proposals. All of those proposals, if they were made, per our ground rules that we sign—you know, these are rules that are signed before we actually get into bargaining—require all of that to be in writing. So it wasn't discussed because no one made a proposal to that effect. Not them, not us." He testified without objection that if City had implemented something incorrectly, Association "would bring an unfair labor practice" to PERB.

6

*Court's Ruling*

The court issued an tentative oral ruling in City's favor, finding Association had not met its burden of proof and that it was "undisputed that, according to [City's] earnings codes documents, incentive pay is expressly excluded [from Base Compensation]." Thereafter City prepared a proposed statement of decision, to which Association objected.

The court's final statement of decision provides in part: "[T]he parties do not dispute the following (1) the incentive pay was created by a[n] . . . MOU . . . on July 1, 2021, (2) it is paid on an annual one-time $3,000 cash basis to members in police management positions and not on a regular bi-weekly basis, (3) since its inception, the incentive pay was classified by the City as non-pensionable under . . . [SDMC 24.0103], (4) the incentive pay has always been listed as non-pensionable on all City Earnings Codes Documents, (5) the City is a Charter City with pension laws and regulations independent of other public agencies, (6) in 2000, the City amended [the San Diego Municipal Code] and changed the definition of pensionable pay from 'Compensation Earnable' to 'Base Compensation,' and (7) since 2000, 'Base Compensation' as codified in [SDMC 24.0103] has been defined as follows: [¶] ***'Base Compensation'* means and includes the base salary or wages paid (standard hours multiplied by the hourly rate) on a regular bi-weekly basis to an employee for his or her services in any given pay period,** including (by way of example) but not limited to such items of compensation as: time during which the employee is excused from work for holidays, annual leave taken, sick leave taken, compensatory time off taken, industrial leave taken, discretionary or furlough leave taken, and pay for out-of-class assignments."

7

The court "conclude[d] that if an item is (1) not paid on a regular bi-weekly basis, (2) not listed or in sync with this definition of [B]ase [C]ompensation, or (3) not identified by the City on the Earnings Code[s] Documents as pensionable, it is non-pensionable. (SDMC [ ] 24.0103.)  Here, the incentive pay is (1) not paid on a regular bi-weekly basis, (2) not listed or in sync with the definition of [B]ase [C]ompensation, and (3) not identified in the Earnings Code[s] Documents as pensionable; thus, it is non-pensionable." The court distinguished the circumstances in *Sloan*, *supra*, D049158, pointing out that Association had not identified any "one-time" pays inconsistent with City's determination.[2]  It found City's determination not arbitrary, capricious or entirely lacking in evidentiary support.  The court concluded that "[Association] has not proven its case and all claims are decided in the City's favor."  The court thereafter entered judgment in City's favor, declaring it the prevailing party.

Association and City each appeal from the judgment.

---

[2]    The court reasoned:  "[U]nlike canine care pay in the *Sloan* case . . . , which was incorrectly identified as pensionable prior to 2006, the incentive pay has always been identified in the Earnings Code[s] Document as excluded from [B]ase [C]ompensation.  . . .  With respect to any pays identified by the City in prior briefing (including holiday pay, annual leave, sick leave, compensatory time off, industrial leave, discretionary or furlough leave), those pays are directly carved out in [SDMC] 24.0103 as pensionable compensation when employees are out on leave.  Unlike incentive pay that is paid once per year in a lump sum in addition to an employee's regular bi-weekly wages, these pays are paid throughout the year and simply replace regular wages.  Because they replace pensionable wages/salary, they are pensionable.  The incentive pay does not replace regular wages, it is in addition to regular wages and easily distinguishable.  Upon questioning by the court, [Association] has failed to identify any inconsistency with the City's determination."

## DISCUSSION

### I. *Standard of Review*

"A writ of mandate will lie to 'compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station.' " (*Western States Petroleum Assn. v. California Air Resources Bd.* (2025) 108 Cal.App.5th 938, 957, quoting Code Civ. Proc., § 1085.) " 'The standard of review for traditional mandamus (Code Civ. Proc., § 1085), calls for the court to determine whether " 'the agency's decision was arbitrary, capricious or entirely lacking in evidentiary support, contrary to established public policy, unlawful or procedurally unfair.' " [Citation.] Under this deferential standard of review, the court's role is to "ensure that the administrative agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choices made, and the purposes of the enabling statute." ' [Citation.] On appeal, we apply 'the same standard of review as the trial court,' and the dispositive question is the same as it was below . . . ." (*Airport Business Center v. City of Santa Rosa* (2025) 116 Cal.App.5th 501, 511.) We independently review questions of law, such as the interpretation of local ordinances or municipal codes. (*Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1139.)

In matters involving the interpretation of the San Diego Municipal Code, as here, "we apply the ordinary rules applicable to the interpretation of statutes. [Citation.] We first consider the words of the enactment, and if those words, plainly read, are unambiguous, we go no further. [Citation.] If the enactment is susceptible to more than one interpretation, we may consider various extrinsic aids, such as its history, public policy concerns, and the scheme of which the enactment is a part. [Citation.] Nonetheless, even if

9

an enactment is unambiguous on its face, it must be interpreted to avoid an absurd result that does not advance its purpose." (*San Diego Public Library Foundation v. Fuentes* (2025) 111 Cal.App.5th 711, 726.) Further, City's "interpretation of its municipal code 'is entitled to deference' in our independent review of the meaning or application of the law." (*Ibid.*; *Ocean Street Extension Neighborhood Assn. v. City of Santa Cruz* (2021) 73 Cal.App.5th 985, 1028 [according deference to a city's interpretation of its own municipal code "the City itself developed"].)[3]

## II. *City's Municipal Code and* Sloan[4]

In August 2000, to memorialize the settlement of a class action lawsuit City passed an ordinance amending SDMC 24.0103 to define the term "Base Compensation" for purposes of calculating retirement benefits of San Diego City Employees Retirement Systems (SDCERS) members. The amendment

---

[3] "Courts are ' "more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another." ' [Citation.] Other factors supporting an agency's interpretation include careful consideration by senior officials, a consistent and long-standing interpretation, and an interpretation that aligns with the regulation's enactment." (*San Diego Public Library Foundation v. Fuentes, supra*, 111 Cal.App.5th at p. 726.)

[4] Unpublished California opinions may not be cited except under limited circumstances. (Cal. Rules of Court, rule 8.1115(b); *Zachary H. v. Teri A.* (2023) 96 Cal.App.5th 1136, 1143, fn. 4; see *Villalva v. Bombardier Mass Transit Corp.* (2025) 108 Cal.App.5th 211, 228, fn. 8.) We discuss *Sloan, supra*, D049158 solely to address Association's res judicata and collateral estoppel arguments.

eliminated definitions of "Compensation" and "Compensation Earnable," previously used for the calculations.[5]

SDMC 24.0103 now provides in part: " 'Base Compensation' means and includes the base salary or wages paid (standard hours multiplied by the hourly rate) on a regular bi-weekly basis to an employee for his or her services in any given pay period, including (by way of example) but not limited to such items of compensation as: time during which the employee is excused from work for holidays, annual leave taken, sick leave taken, compensatory time off taken, industrial leave taken, discretionary or furlough leave taken, and pay for out-of-class assignments. Base Compensation means salary before pre-tax deductions for such items as participation in a deferred compensation plan, SDCERS, or for authorized dependent health care premiums. . . . A complete listing of included and excluded items of compensation or remuneration is memorialized in a document entitled 'Earnings Codes Included in Retirement Base Compensation' [the Earnings Codes Document], which is prepared annually and which shall be kept on file in the Office of the City Clerk, and also maintained by the City Manager, the City Auditor, the Retirement Administrator and the Personnel Director. The Earnings Code Document

_____

[5] The former version of SDMC 24.0103 had provided: " 'Compensation' means the remuneration paid in cash out of city funds controlled by the Council of the City of San Diego, plus the monetary value as determined by the Board of board, lodging, fuel, laundry and other advantages furnished to an employee in payment for the employee's services." It provided that " 'Compensation Earnable' by a Member means the [B]ase [C]ompensation as determined by the Board for the period under consideration upon the basis of the normal number of days ordinarily worked by persons in the same grade or class of positions during the period and at the same rate of pay. The computation for any absence shall be based on the compensation of the position held by such employee at the beginning of the absence."

[*sic*] shall be amended annually, as necessary to reflect any changes or additions made during the City's budget adoption process. [¶] For purposes of calculating retirement benefits, 'Base Compensation' shall not include any item of compensation or remuneration which is identified in the Earnings Codes Document as excluded from Base Compensation . . . ." (SDMC 24.0103.)

In a November 2021 memo, City's department of finance director and comptroller sent the annual listing of pensionable and non-pensionable wage types for fiscal year 2022. That document identified the newly-created incentive pay as non-pensionable. City's human resources department director acknowledged the list was consistent with the City Council-approved MOU's between City and its employee organizations, as well as "applicable laws and regulations, including ordinances adopted by the City Council, Civil Service Rules and Personnel Regulations."

In *Sloan*, this court in 2008 resolved an appeal from a bench trial after which the trial court determined that SDMC 24.0103 required City to include San Diego police officer "canine care pay" in "Base Compensation." (*Sloan*, *supra*, D049158.) Three City police officers had filed the action seeking declaratory relief on the issue. City took the position that the parties' 2003 MOU characterized the pay as overtime, and that the listing of canine care pay in the Earnings Codes Document was a mistake. (*Ibid*.) After the trial court issued its ruling, the City auditor prepared a new Earnings Codes Document, effective July 1, 2006, which expressly excluded canine care pay from Base Compensation and acknowledged the prior listing was a mistake. (*Ibid*.) City then asked this court to take judicial notice of the new Earnings Codes Document. (*Ibid*.)

12

A panel of this court, interpreting SDMC 24.0103, held that the annual Earnings Codes Document was the source for determining whether a pay item was Base Compensation for purposes of retirement benefits; that it was apparent from the language that the City Council intended to incorporate the document by reference to precisely define the scope and meaning of Base Compensation. (*Sloan*, *supra*, D04958.) We rejected City's reading of SDMC 24.0103 for the proposition that its designation of "payments made for overtime work" as excluded from Base Compensation removed canine care pay from Base Compensation because such pay was overtime pay. (*Ibid*.) We pointed out that the code did not exclude all overtime payments from Base Compensation, but rather stated that Base Compensation " 'shall not include any item of compensation or remuneration *which is identified in the Earnings Codes Document as excluded from Base Compensation . . . .*' " (*Ibid*.) Because canine care pay was not identified as excluded, the sentence did not exclude canine care pay and did not remove City's authority to include such pay in the definition of Base Compensation. (*Ibid*.) This court explained that "under [SDMC] 24.0103, the critical test is not whether certain pay can be construed as overtime pay, but it is whether the pay classification was identified in the Earnings Code[s] Document (incorporated into the Municipal Code) as included within the definition of Base Compensation for purposes of retirement benefits." (*Ibid*.)

This court further held substantial evidence supported the trial court's finding that the inclusion of canine care pay was not a mistake or ministerial error, as high-ranking city officials—including the city manager—signed an acknowledgement expressly agreeing that the earnings codes included as retirement base pay were correct, and such pay was still specifically identified as an item of Base Compensation when the City Council amended

13

the Municipal Code to include the Earnings Codes Document. (*Sloan*, *supra*, D049158.)

This court denied City's request to judicially notice the postjudgment revised Earnings Codes Document as it was not before the trial court at the time it rendered its decision. (*Sloan*, *supra*, D049158.) However, we held it would not change the outcome in any event, as the judgment was to be modified "to clarify that it applies only to canine care pay earned after July 1, 2000, and *earned during a time that canine care pay was designated as Base Compensation on an Earnings Codes Document*." (*Ibid*.)[6] We acknowledged it was "within the scope of the City's authority to prospectively change the types of pay classes that constitute retirement [B]ase [C]ompensation" but the changed definition would not affect the rights of the three police officer plaintiffs on the claims asserted in their lawsuit against City in *Sloan*.

### III. Sloan's *Binding or Preclusive Effect*

We quickly dispose of Association's argument that the trial court was "bound to follow *Sloan*." Unpublished opinions are not precedent. (*Hart v. Clear Recon Corp*. (2018) 27 Cal.App.5th 322, 328; *Planning & Conservation*

---

6 This court explained further: "[S]ection 24.0103's definition of Base Compensation as incorporating the annual Earnings Codes Document was effective on July 1, 2000. Before this time, the ordinance did not refer to the Earnings Codes Document, and instead defined Base Compensation by reference to the phrase 'Compensation Earnable.' The Officers do not claim that canine care pay came within the prior definition of 'Compensation Earnable.' Thus, the declaratory judgment should apply only to canine care pay earned after July 1, 2000. [¶] . . . [T]he court's ruling was based on its finding that canine care pay was identified as Base Compensation in the 2000 through 2005 Earnings Codes Documents. Thus, the declaratory judgment ordering that the City include canine care pay in Base Compensation should apply only to canine care pay earned at a time when the Earnings Codes Documents included canine care pay in the category of retirement [B]ase [C]ompensation." (*Sloan*, *supra*, D049158.)

14

*League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 241, fn. 25.)

Association maintains that *Sloan* nonetheless governs due to its preclusive effect under the doctrines of claim and issue preclusion. It is true that we may consider *Sloan* for purposes of assessing its relevance under these doctrines. (Cal. Rules of Court, rule 8.1115(b)(1).) However, Association's arguments on these doctrines are unavailing.

"Claim and issue preclusion have different requirements. . . . [C]laim preclusion . . . appl[ies] 'only when "a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit." ' [Citation.] Issue preclusion, by contrast, 'applies only "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." ' " (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323, italics omitted; see also *Arroyo v. Pacific Ridge Neighborhood Homeowners Assn.* (2025) 116 Cal.App.5th 627, 640.)

A. *Issue Preclusion Does Not Apply*

"For purposes of [issue preclusion], an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] . . . [Citations.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-512; see also *Arroyo v. Pacific Ridge Neighborhood Homeowners Assn., supra,* 116 Cal.App.5th at p. 640; *Kemper v. County of San Diego* (2015) 242 Cal.App.4th 1075, 1088-1089.)

Association argues only that *Sloan* decided the correct interpretation of Base Compensation under SDMC 24.0103, and that the Earnings Codes Document governed. According to Association, *Sloan* also "included recognition, twice, that the Earnings Code[s] Documents contained rules." But Association does not recount what *factual allegations* were at stake and litigated in *Sloan*, as it must under the principles stated above. The "ultimate issues or dispositions" are not relevant. (*Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 512; *Arroyo v. Pacific Ridge Neighborhood Homeowners Association, supra*, 116 Cal.App.5th at p. 640.) *Sloan* stated that the plaintiffs in their action were "seeking an order requiring the City to include canine care pay in Base Compensation." (*Sloan, supra*, D049158.) The allegations and issues pertained to that different element of pay, thus the litigation and determination of that issue in *Sloan* does not prevent City from litigating the issue of whether incentive pay must be included in Base Compensation.

B. *Association Has Not Demonstrated Claim Preclusion Applies*

Association argues claim preclusion applies and required City to use the Earnings Codes Document to determine Base Compensation. However, Association does not address whether Association and the plaintiff officers in *Sloan* were privies for that doctrine. On that ground alone, the claim fails.

Setting that deficiency aside, Association does not demonstrate the same causes of action were at stake. " ' "Two proceedings are on the same cause of action if they are based on the same 'primary right.' [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right,

16

the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. [Citation.] [¶] An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose." ' " (*Arroyo v. Pacific Ridge Neighborhood Homeowners Assn.*, *supra*, 116 Cal.App.5th at p. 627.)

Association acknowledges these principles but does not apply them. It merely says again that *Sloan* determined the correct interpretation of the term "Base Compensation" under SDMC 24.0103, and held the Earnings Codes Document "is the source for determining whether a pay item was Base Compensation for purposes of retirement benefits." We are not persuaded that this demonstrates *Sloan* and this action involve the same cause of action for purposes of applying claim preclusion. As we see it, the primary right involved in *Sloan* was the right to have a specific pay item, canine care pay, included in Base Compensation for purposes of the plaintiffs' retirement calculation. The plaintiffs' injury—the failure to include *that* pay in their retirement calculation—is a distinct injury from the injury in this case, involving the annual $3,000 incentive pay for certain managerial employees.

In short, neither City, the trial court, nor this court are bound to follow *Sloan* as precedent or are precluded from relitigating the issues presented by Association's suit with regard to incentive pay. We observe that even if that were not the case, *Sloan* would compel us to conclude that City properly classified incentive pay as excluded. Under *Sloan*, the Earnings Codes Document governs, and here, the Earnings Codes Document put out after the creation of incentive pay has always excluded that pay from Base Compensation under SDMC 24.0103.

17

IV. *Arguments Concerning Earnings Codes Documents Presumption*

Association makes a series of arguments concerning an official duty presumption (Evid. Code, § 664) it asks this court to apply: that City did not change what Association characterizes as "rules" contained within iterations of the Earnings Codes Document from 1998 to 2005. Association explains that in those years, the Earnings Codes Documents contained language stating: " 'The earnings codes listed below are classified as "regular pay . . ." and are included in retirement base earnings because all employees performing that class of work during their ordinary work hours on a consistent basis earn them at the same rate of pay . . . .' " (Capitalization omitted.) It points out that even after the August 2000 amendment to SDMC 24.0103,[7] six different versions of the annual Earnings Codes Document still contained those so-called rules, but that in 2007 City "stopped publishing" them in its Earnings Codes Documents. According to Association, this language must be used to characterize the pensionability of the incentive pay at issue here because it would have been illegal for City to change or eliminate them for various reasons. It argues under this Earnings Codes Document language the incentive pay should be pensionable because all captains and lieutenants earned it at the same rate of pay, and they performed that work during their ordinary work hours.

In our view, these arguments ask us to apply a presumption that contradicts the presumption of correctness of the judgment in City's favor. (See *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 823 [applying presumption of correctness to judgment on mandate claim].) Additionally, while Association argued in its trial brief that City's elimination of the

[7]    Association erroneously identifies the amendment date as August 7, 2020 in its opening brief.

previous Earnings Codes Document language would have been unlawful, it did not raise the Evidence Code section 664 official duty presumption in the trial court. That principle, which affects the burden of proof (*In re Stevenson* (2013) 213 Cal.App.4th 841, 859), entitles City to the benefit of the presumption that its official duties, including in negotiating with Association on required matters, have been regularly performed. (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 548, called into doubt on other grounds in *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186, 204-205.) The trial evidence confirmed that City and Association negotiated the incentive pay in reaching the July 2001 MOU; while its pensionability was not discussed, City is entitled to the presumption that any decision on that point was properly reached.

Nevertheless, in effect, Association's presumption arguments would have City and this court apply the now-defunct "Compensation Earnable" definition in former SDMC 24.0103 (see footnote 5, *ante*) to the determination of whether the incentive pay created in 2021 is pensionable. This would be contrary to the plain meaning of SDMC 24.0103, which in 2000 eliminated the definition of "Compensation Earnable." SDMC 24.0103 unambiguously states that "Base Compensation means and includes the base salary or wages paid (standard hours multiplied by the hourly rate) *on a regular bi-weekly basis* to an employee for his or her services in a given pay period." (SDMC 24.0103, italics added.) And Base Compensation "shall not include any item of compensation or remuneration which is identified in the Earnings Codes Document as excluded from Base Compensation." (SDMC 24.0103.) City reasonably determined that because incentive pay is paid in a lump sum once per year and not bi-weekly, it is properly not included in Base Compensation.

19

We note that in making these arguments, Association seeks to rely on May 1999 deposition testimony from a former City payroll supervisor concerning the previous standards used to decide whether "add-ons" would be included in Base Compensation. It cites to the transcript containing that testimony, trial exhibit 13, which the trial court declined to receive or judicially notice. Neither party challenges the court's evidentiary rulings, so we decline to consider the refused evidence.

We further reject the premise of Association's presumption arguments, that is, that the language contained in prior Earnings Codes Documents is somehow a promulgated rule or regulation so as to subject City's elimination of that verbiage to Meyers-Milias-Brown Act requirements (see, e.g., Gov. Code, § 3504.5 [requiring "reasonable written notice to each recognized employee organization affected of [*sic*] any ordinance, rule, resolution, or regulation directly relating to matters within the scope of representation proposed to be adopted by the governing body . . . ."]),[8] or that City's action in that respect is subject to principles concerning vested pension benefits rights. After the 2021 creation of incentive pay, City's Earnings Codes Document for that fiscal year designated it as excluded from Base Compensation. Because City has always excluded incentive pay from Base Compensation, it has not eliminated, changed or modified any vested pension right.

Nor do we agree that the Earnings Codes Document language constitutes an "ordinance," much less an "ordinance amending the retirement system," invoking the City charter requirement that members of the

_____

[8] In its reply papers, Association makes clear it is not appealing the court's summary adjudication of its cause of action asserting City's violation of the Meyers-Milias-Brown Act. But Association's presumption argument effectively seeks a determination of the legality of City's actions under that Act.

20

retirement system approve it by a majority vote. (See *Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 249-250 ["[San Diego City] Charter section 143.1(a) states that '[n]o ordinance amending the retirement system which affects the benefits of any employee *under such retirement system* shall be adopted without the approval of a majority vote of the members of said system"].) This latter argument is premised on *Sloan* in any event, so we may disregard it on that ground alone.

## V. *The Court's Ruling Resolved Association's Writ Petition and Request for Declaratory Relief*

Association contends the trial court erred by failing to issue its requested writ of mandate. It suggests the court did not issue the writ because it "did not determine what the Earnings Code[s] Document rules were or whether they changed . . . ." Association further contends the court "declined" to resolve its declaratory relief cause of action. It repeats its assertion about the court's failure to address the Earnings Codes Document rules, and claims the court "dodged the primary issue in the case."[9]

We disagree. The court's statement of decision expressly states that Association "has not proven *its case* and *all claims* are decided in the City's

---

[9]    Though Association points out it objected to City's proposed statement of decision (Cal. Rules of Court, rule 3.1590(g)), it does not detail those objections. Nor does it assert it objected to the trial court's final statement of decision before the court entered judgment on July 1, 2024. Association makes no arguments in any event about the effect of objections to a statement of decision or the doctrine of implied findings. (See Code Civ. Proc., §§ 632, 634; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 ["[I]f the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue' "].)

21

favor." (Italics added.) The court thus resolved the mandate petition and declarative relief cause of action against awarding the sought-after relief.

## VI. *City's Appeal*

In City's appeal, City argues the court should have ruled that Association's claims, particularly its argument that City had improperly changed the Earnings Codes Document "rules," are either barred by the statute of limitations or by issue and claim preclusion. The court did not reach the issues given its determination in City's favor on the merits. Having upheld the judgment in City's favor, we likewise need not reach those affirmative defenses.

For the same reason, we deny City's request that we take judicial notice of four items assertedly from the superior court file in different cases that City lists as trial exhibits 102, 103, 141 and 13: two reporter's transcripts from August 2010 and May 2006, an August 2010 settlement agreement, and a deposition transcript. The exhibits, which were not admitted into evidence below, are not relevant or necessary to our resolution of this appeal. (*San Diego City Firefighters, Local 145 v. Bd. of Admin. of San Diego City Employees Retirement System* (2012) 206 Cal.App.4th 594, 600, fn. 3.) We would deny the request on procedural grounds as well. Apart from citing the Evidence Codes in its motion, City "present[s] no issue for which judicial notice of these items is necessary, helpful, or relevant." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6; see also *Brown v. Department of Motor Vehicles* (2026) 118 Cal.App.5th 206, 256, fn. 1 [denying request as party "provide[ed] no legal support or analysis about how these are proper subjects for judicial notice"]; *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 744

22

["The burden is on the party seeking judicial notice to provide sufficient information to allow the court to take judicial notice"].)

## DISPOSITION

The judgment is affirmed.  The City of San Diego shall recover its costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.